**KEEGO HARBOR CO.,**
**Plaintiff-Appellant,**

v.

**CITY OF KEEGO HARBOR, et al.,**
**Defendants-Appellees.**

**No. 81–1095.**

United States Court of Appeals,
Sixth Circuit.

Argued June 2, 1981.
Decided Aug. 12, 1981.

Stephen M. Taylor, Southfield, Mich., for plaintiff-appellant.

Thomas J. Dillon, Dillon & Ryan, Pontiac, Mich., Gerald A. Fisher, Fisher & Wallace, Ortonville, Mich., for defendants-appellees.

Before MERRITT and JONES, Circuit Judges, and PHILLIPS, Senior Circuit Judge.

MERRITT, Circuit Judge.

Plaintiff, Keego Harbor Company, challenges under the First and Fourteenth Amendments the constitutionality of a zoning ordinance of the City of Keego Harbor that prohibits "adult" movie theatres in the town. The District Court upheld the constitutionality of the ordinance. We reverse because the town has not met its burden of justifying the restrictions on protected speech. The ordinance therefore abridges the First Amendment.

## I.

Land use in Keego Harbor is governed by a comprehensive zoning ordinance that designates several different activities, such as drive-in businesses and marinas, as "principal uses permitted subject to special" zoning restrictions. In 1978 Keego Harbor amended its zoning ordinance to add "Adult Picture Theatres" to the list of "regulated" uses. The amendment applies to the "use of property commercially for displaying ma-

terials a significant portion of which include matters depicting, describing or presenting Specified Sexual Activities for observation by patrons." "Significant portion" and "specified sexual activity" are both defined so as to eliminate from this category non-sexual nudity, scenes under five minutes, or scenes that comprise less than ten per cent of the film. The ordinance then prohibits placement of an "adult motion picture" within 500 feet of an establishment licensed to sell liquor, a church or a school, or within 250 feet of property zoned by Keego Harbor for residential use.[1]

Keego Harbor is an unusual community that arose as a largely recreational town. The 300-acre city contains about 3,000 people. It has twenty bars within its small jurisdiction, no grocery, no drug store, and no middle or high school. The main streets are insufficient to meet the traffic flow, but cannot be widened.

The local movie theatre came under new management in late 1980, and the new owner announced its intention to convert the theatre into an adult movie establishment. Under the ordinance, however, there is no location within the confines of Keego Harbor that is *not* within 500 feet of a bar or other regulated use. The ordinance, in effect, prohibits adult theatres.

Plaintiff challenges the ordinance in federal court as void for overbreath because it effectively zones adult movie theatres from the town. District Judge Joiner issued an oral opinion sanctioning the ordinance under the First Amendment. He defined the market area—the area from which movie patrons would come—as much larger than the City of Keego Harbor. Quoting from *Young v. American Mini Theatres*, 427 U.S. 50, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976), he concluded that the "market for this community is essentially unrestrained." The core of the District Court rationale was:

> The Constitution simply says that a community may not take steps that deny an exhibitor means to a market. The record is clear in this case that the market embraces most if not all of Oakland County. There is nothing in the law that should nor should there be that requires each and every hamlet, no matter how small, to provide a space for explicit sex films, even though they may not join together with others to keep an exhibitor out of a market. Until it is shown that the act of Keego Harbor effectively keeps the exhibitor from the market from which he expects to draw his customers, he cannot prevail.

1. Section 9.02.8 of Keego Harbor ordinance No. 157 defines the relevant phrases and provides:
   RESTRICTIONS:
   An adult motion picture theatre shall be situated within the city so as to be out of the reasonable proximity of uses selling alcoholic beverages and uses where juveniles are generally present, and, specifically, an adult motion picture theatre shall not be located within:
   1. Five hundred feet of an establishment licensed by the Michigan Liquor Control Commission or a church;
   2. Five hundred feet of a public or private school having curriculum including kindergarten or any one or more grades one through twelve; or
   3. Two hundred fifty feet of property zoned for residential use under the Keego Harbor Zoning Ordinance, as amended.
   *    *    *    *    *    *
   After the above restrictions are met, § 14.08 of the ordinance further requires review by the Planning Commission and the permission of the City Council before the "regulated use" may begin. The Planning Commission and Council "may" grant a permit for the use, and "may specify such appropriate additional requirements as it shall deem necessary to meet the standards of this section and the intent of this ordinance." The Planning Commission and Council "shall" apply the standards listed in the ordinance. They are to consider whether the use is in harmony with the appropriate and orderly development of the zoning district, traffic patterns, detrimental effects, and various other factors. In addition to the challenges discussed in the text, plaintiff also argues that the ordinance violates First Amendment and due process requirements as written or applied because of the absence of sufficiently specific, objective standards under which the City Council grants or denies permission for an adult theatre. The Council did not need to review plaintiff's claim under § 14.08 because the prior requirements of § 9.02.8 were not met. In light of our decision on the constitutionality of § 9.02.8, we need not examine § 14.08.

The fact that the market for adult fare might be unrestrained, however, does not give a local community *carte blanche* to regulate without concern for the First Amendment. *Schad v. Borough of Mount Ephraim*, —— U.S. ——, 101 S.Ct. 2176, 68 L.Ed.2d 671 (1981), a decision announced after the District Court ruling in this case, makes it clear that the proper inquiry is whether a city provides "sufficient justification" for imposing a burden on the First Amendment. Access to the relevant market is only one factor in this inquiry.

## II.

■ In general, any regulation of protected activity that is based in whole or in part upon the content of the communication is invalid under the First Amendment. *Consolidated Edison Co. v. Public Service Commission*, 447 U.S. 530, 100 S.Ct. 2326, 65 L.Ed.2d 319 (1980). One exception to this general rule is the zoning of sexually explicit materials. In *Young v. American Mini Theatres*, 427 U.S. 50, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976), the Supreme Court ruled that a state may legitimately use the content of adult motion pictures as the ba-

sis for subjecting them to treatment different from that accorded other motion pictures.[2] The Court concluded in *Young* that the classification made by the city of Detroit was justified by the city's interest in preserving the character of its neighborhoods. It noted that there was a factual basis for the city's conclusion that a zoning ordinance that dispersed adult motion pictures would have the desired effect of preserving neighborhoods. 427 U.S. at 71, 96 S.Ct. at 2452. Because the Detroit ordinance only limited the *place* where adult films may be exhibited and did not suppress or greatly restrict access to lawful speech, it was held valid.

■ Prior to oral argument in this case the Supreme Court handed down a new decision in the area of zoning constitutionally protected activities. In *Schad v. Borough of Mount Ephraim*, the Court struck down an ordinance that prohibited live entertainment, including nude dancing, because there was not "sufficient justification"[3] for the exclusion of a broad category of protected expression. *Mount Ephraim* carefully noted that *Young v. American Mini Theatres* was not controlling. *Young*

---

**2.** In *Carey v. Brown*, 447 U.S. 455, 100 S.Ct. 2286, 65 L.Ed.2d 263 (1980), the Court stated that a limitation on picketing was not content-neutral simply because it did not discriminate on the basis of the speaker's viewpoint but only on the basis of the subject matter of the message. This viewpoint-subject matter distinction apparently carries more weight when sexually explicit films are involved. *Young v. American Mini Theatres*, 427 U.S. at 70, 96 S.Ct. at 2452. "[T]he regulation of the places where sexually explicit films may be exhibited is unaffected by whatever social, political, or philosophical message a film may be intended to communicate; whether a motion picture ridicules or characterizes one point of view or another, the effect of the ordinance is exactly the same." This distinction is presumably supported because "society's interest in protecting this type of expression is of a wholly different, and lesser, magnitude than the interest in untrammeled political debate. . . ." *Id.*

**3.** *Young* requires that the zoning ordinance affecting only adult theatres be "justified" by the City's interest in preserving the character of its neighborhoods. 427 U.S. at 71, 96 S.Ct. at 2452. *Mount Ephraim* required a "sufficient justification" to further a "sufficiently substan-

tial government interest" when a broad category of protected expression (e. g., live entertainment) was involved. —— U.S. at ——, 101 S.Ct. at 2183. Justice Blackmun, concurring, emphasized that there is no presumption of validity of zoning ordinances when "the zoning regulation trenches on rights of expression protected under the First Amendment." *Id.* at ——, 101 S.Ct. at 2187. Justice Stevens, also concurring, concluded that the burden of persuasion was on Mount Ephraim to demonstrate that the appellant's activities would have an identifiable adverse impact when the ordinance was broad and the record opaque. *Id.* at ——, 101 S.Ct. at 2190.

A variety of terms have been used to describe the government interest that must be shown in order to justify incidental limitations on First Amendment activities. *United States v. O'Brien*, 391 U.S. 367, 376–77, 88 S.Ct. 1673, 1678–1679, 20 L.Ed.2d 672 (1968). Clearly more than a rational relationship must be shown between the ordinance and the government interest. The burden to show the "justification" is on the City. Whatever the precise interest to be shown, the City has not met its burden in this instance.

"did not affect the number of adult movie theatres that could operate in the city; it merely dispersed them." —— U.S. at ——, 101 S.Ct. at 2184. Further, "it was emphasized in [Young] that the evidence presented to the Detroit Common Council indicated that the concentration of adult movie theatres in limited areas led to deterioration of surrounding neighborhoods" and that "the city had justified the incidental burden on First Amendment interests resulting from merely dispersing, but not excluding, adult theatres." *Id. Mount Ephraim* made clear that when a zoning ordinance infringes upon a protected liberty, "it must be narrowly drawn and must further a sufficiently substantial government interest." *Id.* at ——, 101 S.Ct. at 2183.

▮▮▮ In both *Young v. American Mini Theatres* and *Mount Ephraim* the Court looked first to the nature and extent of the zoning restriction. It then looked to the factual support for the restriction in order to determine whether the city had provided sufficient justification for imposing the restriction and whether the city had chosen the least restrictive alternative necessary to achieve the desired goals. When a city effectively zones protected activity out of the political entity, the justification required is more substantial than when the First Amendment burden is merely "incidental," as it was in *Young v. American Mini Theatres*. It might be that the First Amendment burden would be rendered incidental if, for example, county-wide zoning were present to ensure that there were reasonable access to the protected activity in nearby areas.[4] Even a showing that the First Amendment burden is incidental, however, does not relieve a city of its burden of establishing that the restrictions are necessary to meet delineated city goals.

▮▮▮ Applying this analysis to the case at hand, Keego Harbor's *post hoc* justifications fail to support its ordinance. We look first to the nature and extent of the zoning restriction. Keego Harbor, unlike Mount Ephraim, has enacted a zoning ordinance that is drawn to encompass only movie theatres showing films depicting specified sexual activities. Keego Harbor, unlike the city in *Young*, does not merely disperse adult theatres within its jurisdiction but effectively bans them.

We next look for factual support in the record for this prohibition of speech. Keego Harbor attempts to justify the zoning restrictions as necessary to prevent "blight" and to control traffic. The City enacted this "pornography ordinance," however, with little discussion. There appears to have been no objective information presented to the City at the time of enactment of the ordinance. At trial the bulk of the evidence was presented by a City Planner who admitted having no special expertise with the effects of placement of adult theatres. In light of the dearth of information considered by the City when it enacted this ordinance, it is not surprising that the ordinance is poorly-tailored to meet the justifications given at trial. The ordinance does not prohibit two adult theatres from being placed together. No mention is made of adult bookstores. There is no evidence, other than the City Planner's assertion, that the traffic pattern for adult theatres is any different from that for traditional movie theatres. There is no indication that less intrusive measures, such as ticketing violators, would not sufficiently regulate traffic. It is "not immediately apparent as a matter of experience," —— U.S. at ——, 101 S.Ct. at 2185, that adult movie theatres would have a deleterious effect on a town that already has many bars and few of the attributes of a quiet residential community.

4. As a general rule, "one is not to have the exercise of his liberty of expression in appropriate places abridged on the plea that it may be exercised in some other place." *Mount Ephraim*, —— U.S. at ——, 101 S.Ct. at 2187, quoting *Schneider v. State*, 308 U.S. 147, 163, 60 S.Ct. 146, 151–152, 84 L.Ed. 155 (1939). In the same opinion, however, Justice White in writing for the majority recognized that it

"may very well be true" that a political entity could exclude certain protected activity on a showing that county-wide zoning provided "close-by" areas in which the protected activity could be exercised. —— U.S. at ——, 101 S.Ct. at 2187. Whether "reasonable access" will validate a narrowly drawn statute is to be resolved on a case-by-case basis. *Id.* at ——, 101 S.Ct. at 2187 (Blackmun, J., concurring).

■ We do not hold that every unit of government, however small, must provide an area in which adult fare is allowed. —— U.S. at —— n.18, 101 S.Ct. at 2186 n.18. Where, however, an ordinance effectively bans material that is entitled to at least some degree of First Amendment protection, *Young v. American Mini Theatres*, 427 U.S. at 70, 96 S.Ct. at 2452, that ordinance must be justified and drawn to further those justifications. Such proof has not been presented in this case. The judgment of the District Court is therefore reversed.