**PLAYTIME THEATERS, INC., a Washington corporation, et al., Plaintiffs-Appellants,**

**v.**

**The CITY OF RENTON, et al., Defendants-Appellees.**

**The CITY OF RENTON, a municipal corporation, et al., Plaintiffs-Appellants,**

**v.**

**PLAYTIME THEATERS, INC., a Washington corporation, et al., Defendants-Appellees.**

Nos. 83–3805, 83–3980.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 9, 1984.

Decided Nov. 28, 1984.

Robert Eugene Smith, Encino, Cal., for Playtime Theaters, Inc.

Lawrence J. Warren, Daniel Kellogg, Warren & Kellogg, Renton, Wash., for City of Renton.

Before FLETCHER and FARRIS, Circuit Judges, and JAMESON,* District Judge.

* Hon. William J. Jameson, Senior United States District Judge for the District of Montana, sitting by designation.

1. The first ordinance defined an "adult motion picture theater" as
> an enclosed building used for presenting motion picture films, video cassettes, cable television, or any other such visual media, distinguished or characterized by an emphasis on matter depicting, describing or relating to "specified sexual activities" or "specified anatomical areas" as hereafter defined, for observation by patrons therein.

The ordinance defined these terms as follows:
> 2. *"Specified Sexual Activities":*
> (a) Human genitals in a state of sexual stimulation or arousal;
> (b) Acts of human masturbation, sexual intercourse or sodomy;

FLETCHER, Circuit Judge:

These consolidated cases are declaratory judgment actions involving the constitutionality of the City of Renton's zoning ordinances regulating the location of adult motion picture theaters.

In case number 83–3805, Playtime Theaters, Inc. ("Playtime") appeals the district court's order denying a permanent injunction and finding that the ordinance furthers a substantial governmental interest, is unrelated to the suppression of speech, and is no more restrictive than necessary to further that interest. Case number 83–3980 is a declaratory action involving the same parties and issues, filed by the City of Renton in state court after federal proceedings had begun. This action was twice removed to federal court and twice remanded to state court. Renton appeals the district court's denial of its motion for fees and costs on the second removal. We reverse in number 83–3805 and affirm in number 83–3980.

## I

## BACKGROUND

In April, 1981, the City of Renton enacted ordinance number 3526 which prohibited any "adult motion picture theater" [1] within one thousand feet of any residential zone or single or multiple family dwelling, any church or other religious institution, and any public park or area zoned for such use.

> (c) Fondling or other erotic touching of human genitals, pubic region, buttock or female breast.
> 3. *"Specified Anatomical Areas":*
> (a) Less than completely and opaquely covered human genitals, pubic region, buttock, and female breast below a point immediately above the top of the areola; and
> (b) Human male genitals in a discernible turgid state, even if completely and opaquely covered.

The second ordinance expanded the defined term of "used" as:
> a continuing course of conduct of exhibiting "specific [sic specified?] sexual activities" and "specified anatomical area["] in a manner which appeals to a prurient interest.

The ordinance further prohibited any such theater from locating within one mile of any public or private school. At the time this ordinance was enacted, no adult theaters were located in Renton, although there were other theaters within the proscribed area.

In January, 1982, Playtime acquired two existing theaters in Renton with the purpose of exhibiting adult motion pictures in at least one, the Renton Theater, which is located within the area proscribed by ordinance number 3526.[2]

Just prior to closing the sale of the theater, on January 20, 1982, Playtime filed an action in federal court, seeking a declaration that the ordinance was unconstitutional and a permanent injunction against its enforcement.

A month later, on February 19, 1982, Renton brought suit in state court seeking a declaratory judgment that the ordinance was constitutional on its face and as applied to Playtime's proposed use. The complaint alleged that an actual dispute existed because of the pending federal lawsuit and because Playtime asserted that the ordi-

nance was unconstitutional. On February 22, 1982, Renton moved to dismiss Playtime's federal action on the grounds that the federal court should abstain in favor of the state action, citing *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975).

On March 8, 1982, Playtime removed the state action to federal court and Renton moved to remand. On March 25, the magistrate filed his recommendation that abstention was improper in the first action and on April 9, he recommended that the removed state action be remanded for lack of jurisdiction because the complaint failed to state a claim upon which relief could be granted. The district court approved both recommendations, denying the motion to dismiss the federal action on May 5, 1982, and remanding the state action on January 13, 1983.

On May 3, 1982, Renton passed an emergency ordinance, amending ordinance number 3526. The new ordinance added an elaborate statement of reasons for the enactment of the ordinances,[3] it further de-

**2.** For the purposes of this opinion, "adult motion picture theater" or "adult theater" refers to the definition used by the City. *See supra* note 1. We express no view as to the effect of this definition on the constitutionality of the ordinance. *See infra* note 18.

**3.** The City gave the following reasons in the amended ordinance:

1. Areas within close walking distance of single and multiple family dwellings should be free of adult entertainment land uses.
2. Areas where children could be expected to walk, patronize or recreate should be free of adult entertainment land uses.
3. Adult entertainment land uses should be located in areas of the City which are not in close proximity to residential uses, churches, parks and other public facilities, and schools.
4. The image of the City of Renton as a pleasant and attractive place to reside will be adversely affected by the presence of adult entertainment land uses in close proximity to residential land uses, churches, parks and other public facilities, and schools.
5. Regulation of adult entertainment land uses should be developed to prevent deterioration and/or degradation of the vitality of

the community before the problem exists, rather than in response to an existing problem.

6. Commercial areas of the City patronized by young people and children should be free of adult entertainment land uses.
7. The Renton School District opposes a location of adult entertainment land uses within the perimeters of its policy regarding bussing of students, so that students walking to school will not be subjected to confrontation with the existence of adult entertainment land uses.
8. The Renton School District finds that location of adult entertainment land uses in areas of the City which are in close proximity to schools, and commercial areas patronized by students and young people, will have a detrimental effect upon the quality of education which the School District is providing for its students.
9. The Renton School District finds that education of its students will be negatively affected by location of adult entertainment land uses in close proximity to location of schools.
10. Adult entertainment land uses should be regulations [sic] by zoning to separate it from other dissimilar uses just as any other

fined the word "used,"[4] and it reduced the required distance from schools from one mile to 1000 feet. The ordinance also contained a clause stating that the federal litigation created an emergency making immediate adoption of the new ordinance necessary.[5] The ordinance was reenacted on June 14, 1982, without the emergency clause.

On June 23, 1982, the magistrate heard Playtime's motion for preliminary injunction and Renton's motions to dismiss and for summary judgment. On November 5, 1982, he filed his recommendation to deny

> land use should be separated from uses with characteristics different from itself.
>
> 11. Residents of the City of Renton, and persons who are non-residents but use the City of Renton for shopping and other commercial needs, will move from the community or shop elsewhere if adult entertainment land uses are allowed to locate in close proximity to residential uses, churches, parks and other public facilities, and schools.
>
> 12. Location of adult entertainment land uses in proximity to residential uses, churches, parks and other public facilities, and schools, may lead to increased levels of criminal activities, including prostitution, rape, incest and assaults in the vicinity of such adult entertainment land uses.
>
> 13. Merchants in the commercial area of the City are concerned about adverse impacts upon the character and quality of the City in the event that adult entertainment land uses are located within close proximity to residential uses, churches, parks and other public facilities, and schools. Location of adult entertainment land uses in close proximity to residential uses, churches, parks and other public facilities, and schools, will reduce retail trade to commercial uses in the vicinity, thus reducing property values and tax revenues to the City. Such adverse affect [sic] on property values will cause the loss of some commercial establishments followed by a blighting effect upon the commercial districts within the City, leading to further deterioration of the commercial quality of the City.
>
> 14. Experience in numerous other cities, including Seattle, Tacoma and Detroit, Michigan, has shown that location of adult entertainment land uses degrade the quality of the area of the City in which they are located and cause a blighting effect upon the City. The skid row effect, which is evident in certain parts of Seattle and other cities, will have a significantly larger affect [sic] upon the City of Renton than other major cities due to the relative sizes of the cities.
>
> 15. No evidence has been presented to show that location of adult entertainment land uses within the City will improve the commercial viability of the community.
>
> 16. Location of adult entertainment land uses within walking distance of churches and other religious facilities will have an adverse effect upon the ministry of such

> churches and will discourage attendance at such churches by the proximity of adult entertainment land uses.
>
> 17. A reasonable regulation of the location of adult entertainment land uses will provide for the protection of the image of the community and its property values, and protect the residents of the community from the adverse effects of such adult entertainment land uses, while providing to those who desire to patronize adult entertainment land uses such an opportunity in areas within the City which are appropriate for location of adult entertainment land uses.
>
> 18. The community will be an undesirable place to live if it is known on the basis of its image as the location of adult entertainment land uses.
>
> 19. A stable atmosphere for the rearing of families cannot be achieved in close proximity to adult entertainment land uses.
>
> 20. The initial location of adult entertainment land uses will lead to the location of additional and similar uses within the same vicinity, thus multiplying the adverse impact of the initial location of adult entertainment land uses upon the residential, [sic] churches, parks and other public facilities, and schools, and the impact upon the image and quality of the character of the community.

4. *See supra* note 1.

5. The emergency clause stated:

> The City Council of the City of Renton finds and declares that an emergency exists because of the pendency of litigation against the City of Renton involving the subject matter of this ordinance, and potential liability of the City of Renton for damages as pleaded in that litigation, and that the immediate adoption of this ordinance is necessary for the immediate preservation of public peak [sic], health, and safety or for the support of city government and its existing public institutions and the integrity of the zoning of the City of Renton. Therefore, this ordinance shall take effect immediately upon its passage and approval by the Mayor.

The City used this clause as justification for a renewed motion to dismiss and a motion for summary judgment, both of which were filed on May 4, the next day.

Renton's motion and to grant Playtime a preliminary injunction. He found that the ordinance "for all practical purposes excludes adult theaters from the City," that only 200 acres were not restricted by the ordinance, and that all of these areas were "entirely unsuited to movie theater use." He further found that Renton had not established a factual basis for the adoption of the ordinance and that the motives behind the ordinance reflected "simple distaste for adult theaters because of the content of the films shown." On January 11, 1983, the district court entered an order approving and adopting these findings and granting a preliminary injunction.[6] For the first time, Playtime began showing adult movies at the Renton Theater.

On February 8, 1983, the parties entered into a stipulation to submit the case for hearing on whether a permanent injunction should issue on the basis of the record already developed. On February 17, 1983, the district court vacated the preliminary injunction and denied the permanent injunction. The court found that 520 acres were available as potential sites for adult theater use and that this ordinance did not substantially restrict first amendment interests.[7] The court further held that Renton was not required to show specific adverse impact on Renton from the operation of adult theaters but could rely on the experiences of other cities. Lastly, the court found that the purposes of the ordinance were unrelated to the suppression of speech and that the restrictions it imposed were no greater than necessary to further the governmental interest.

On May 19, 1983, after denial of the permanent injunction, and after the notice of appeal was filed in this court, Renton filed an amended complaint in state court seeking, in addition to the originally requested declaratory relief, abatement of the operation of Playtime's adult theaters. On June 8, 1983, Playtime removed the action to federal court on the ground that

Renton sought to enforce statutes that had been declared unconstitutional by this court. The district court remanded because the case did not arise under federal law; the federal issue was only a defense. It denied Renton's motion for costs and fees because it found that the petition raised serious questions of law and that Playtime had not acted in bad faith. Renton appeals the denial of costs and fees.

## II

## JURISDICTION

Renton argues that abstention was appropriate in this case because it involves vital state interests, *see Railroad Commission v. Pullman Co.*, 312 U.S. 496, 501, 61 S.Ct. 643, 645, 85 L.Ed. 971 (1941), and because the exercise of federal jurisdiction would interfere with the pending state action, *see Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). We do not agree.

### A. Pullman *Abstention is Inappropriate in This Case.*

We recently held that the *Pullman* abstention doctrine was inapplicable in a facial challenge to Washington's anti-obscenity statute. *J-R Distributors, Inc. v. Eikenberry*, 725 F.2d 482 (9th Cir.1984). We recognized that *Pullman* abstention would almost never be appropriate in first amendment cases because such cases involve strong federal interests and because abstention could result in the suppression of free speech. *Id.* at 487–88. Similarly, we find that the district court in the case at hand appropriately declined to abstain because "abstention would not eliminate or materially alter the constitutional issues presented." *Spokane Arcades, Inc. v. Brockett*, 631 F.2d 135, 137 (9th Cir.1980), *aff'd mem.*, 454 U.S. 1022, 102 S.Ct. 557, 70 L.Ed.2d 468 (1981).

---

**6.** We denied the City's application for a writ of mandamus to stay the preliminary injunction.

**7.** The court did not explain the variance between this finding and its prior finding, made at the time it granted the preliminary injunction, that only 200 acres were available.

**B. Younger** *Abstention is Inappropriate in This Case.*

■ We find *Younger* abstention inappropriate as well. Federal courts, concerned for federal-state comity, have employed *Younger* abstention to prevent federal interference with pending state criminal proceedings. *Goldie's Bookstore, Inc. v. Superior Court,* 739 F.2d 466, 469 (9th Cir.1984); *see also Huffman v. Pursue, Ltd.,* 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975). In this case, Renton asked the district court to abstain in favor of a state court action that sought only a declaration of the ordinance's constitutionality.

The cases applying *Younger* abstention have arisen in criminal or quasi-criminal contexts. We have refused to extend *Younger* to civil cases generally. *See Goldie's Bookstore,* 739 F.2d at 469–70; *Champion International Corp. v. Brown,* 731 F.2d 1406 (9th Cir.1984). We agree with the district court's refusal to do so in this case as well. As we discussed in *Miofsky v. Superior Court,* 703 F.2d 332 (9th Cir.1983), in each of the cases in which *Younger* has been applied in a civil context, the civil suits "bore similarities to criminal proceedings or otherwise implicated state interests vital to the *operation* of state government." *Id.* at 337 (emphasis added). These dual requirements are not present in a civil case seeking only declaratory relief.

Playtime did not violate the ordinance prior to challenging it. Thus, it was not even potentially subject to the sort of enforcement action to which *Younger* applies. In *Doran v. Salem Inn, Inc.,* 422 U.S. 922, 95 S.Ct. 2561, 45 L.Ed.2d 648 (1975), the plaintiff challenged a local ordinance prohibiting topless dancing in bars. Three bars in the town were affected and all complied with the ordinance prior to commencing suit in federal court. The day after the federal complaint was filed, one bar, M & L, resumed topless dancing and was prosecuted criminally. The other two bar owners remained in compliance. The court held that *Younger* abstention applied to M & L, but the retention of jurisdiction over the other two bar owners was proper because they were not subject to criminal prosecution prior to the issuance of the preliminary injunction. Playtime's position is like that of the two bars in *Doran.*

Playtime showed adult films in Renton for the first time after the district court entered its preliminary injunction. By the time Renton amended its complaint in the state action to include abatement of the nuisance, making it the sort of enforcement action to which *Younger* might arguably apply,[8] final judgment denying the injunction had already been granted in the district court. At this point, abstention was inappropriate.[9]

---

**8.** In *Huffman v. Pursue, Ltd.,* 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975), the Supreme Court held that a federal court could not enjoin enforcement of a state judgment in a nuisance abatement action brought by the state against an adult theater. The Court rejected the argument that *Younger* was restricted to criminal proceedings, but carefully limited its holding by recognizing that the state action was "in important respects ... more akin to a criminal prosecution than are most civil cases.... The proceeding is both in aid of and closely related to criminal statutes ...." *Id.* at 604, 95 S.Ct. at 1208. In *Juidice v. Vail,* 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977), the Court held that *Younger* applied to a state civil contempt proceeding because the state's "interest in the contempt process ... vindicates the regular operation of its judicial system." *Id.* at 335, 97 S.Ct. at 1217. In *Trainor v. Hernandez,* 431 U.S. 434, 97 S.Ct. 1911, 52 L.Ed.2d 486 (1977), abstention was required in deference to a prior state civil action brought by the state of Illinois to recover welfare payments obtained by fraud. The Court noted, however, that the action was "an ongoing civil enforcement action ... brought by the State in its sovereign capacity." *Id.* at 444, 97 S.Ct. at 1918. And, in *Moore v. Sims,* 442 U.S. 415, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979), abstention was required as to a pending state proceeding in which the state was seeking custody of children abused by their parents.

**9.** The court in *Huffman* recognized that
"When no state criminal proceeding is pending at the time the federal complaint is filed, federal intervention does not result in duplicative legal proceedings or disruption of the state criminal justice system; nor can federal intervention, in that circumstance, be interpreted as reflecting negatively upon the state court's ability to enforce constitutional principles."

## III

### THE STANDARDS FOR REGULATION OF SPEECH THROUGH THE USE OF THE ZONING POWER

■ Local governments may zone for the public welfare. *See Berman v. Parker*, 348 U.S. 26, 32–33, 75 S.Ct. 98, 102–103, 99 L.Ed. 27 (1954). The power is considerable but it must be exercised within constitutional limits. *See Schad v. Borough of Mount Ephraim*, 452 U.S. 61, 68, 101 S.Ct. 2176, 2182, 68 L.Ed.2d 671 (1981). We have an obligation to scrutinize strictly zoning decisions that infringe first amendment rights. *Tovar v. Billmeyer*, 721 F.2d 1260, 1264 (9th Cir.1983), *cert. denied,* —— U.S. ——, 105 S.Ct. 223, 83 L.Ed.2d 152 (1984).[10]

The district court found that 520 acres in Renton were available for adult theater sites. Although we do not quarrel with the conclusion that 520 acres is outside the restricted zone, we do not agree that the land is available.[11] A substantial part of the 520 acres is occupied by:

(1) a sewage disposal site and treatment plant;

(2) a horseracing track and environs;

(3) a business park containing buildings suitable only for industrial use;

(4) a warehouse and manufacturing facilities;

(5) a Mobil Oil tank farm; and,

(6) a fully-developed shopping center.

■ Limiting adult theater uses to these areas is a substantial restriction on speech. Thus, the Renton ordinance, although patterned after the Detroit zoning ordinance upheld in *Young v. American Mini Theaters, Inc.*, 427 U.S. 50, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976), is quite different in its effect. The Detroit ordinance prohibited the location of an adult theater within 1,000 feet of another adult theater or other use having similar deleterious effects on neighborhoods, or within 500 feet of a residential area. There was no showing in *Young* that the ordinance seriously limited the number of sites available for adult theaters. The Renton ordinance's prohibition against adult theaters within 1,000 feet of schools, parks, churches, and residential areas would result in a substantial restriction on this activity.

■ The Supreme Court developed a useful test to measure a challenged regulation affecting speech in *United States v. O'Brien*, 391 U.S. 367, 377, 88 S.Ct. 1673, 1679, 20 L.Ed.2d 672 (1968), cited with approval in *Schad*, 452 U.S. at 69 n. 7, 101 S.Ct. at 2183 n. 7. Under this test, a regu-

*Huffman*, 420 U.S. at 603, 95 S.Ct. at 1207–1208 (quoting *Steffel v. Thompson*, 415 U.S. 452, 462, 94 S.Ct. 1209, 1217, 39 L.Ed.2d 505 (1974)).

If, however, "state criminal proceedings are begun against the federal plaintiffs after the federal complaint is filed but *before any proceedings of substance on the merits* have taken place in the federal court, the principles of *Younger v. Harris* should apply in full force." *Hicks v. Miranda*, 422 U.S. 332, 349, 95 S.Ct. 2281, 2292, 45 L.Ed.2d 223 (1975) (emphasis added). In *Hicks*, state officials confiscated allegedly obscene movies and brought an action in state court against two employees of the theater. The theater owners sought injunctive relief in federal court and the day after the owners filed the federal complaint, the state charged the theater owners along with their employees in state court. The court applied *Younger* because "appellees were charged ... prior to answering the federal case and prior to any proceedings whatsoever before the three judge court." *Id.* at 349–50, 95 S.Ct. at 2292.

**10.** We note that obscenity is not at issue in this case. The City asks us to take notice of a state

superior court decision in *City of Renton v. Playtime Theaters*, No. 82–2–02344–2 (Superior Court, King County, Washington, March 9, 1984), in which an advisory jury ruled that four out of ten movies shown by Playtime are obscene. The City did not argue before the district court that Playtime's movies were obscene. We would not reach the issue in any event since this case does not involve the enforcement of an anti-obscenity statute.

**11.** Although this circuit has not considered what "available" means in this context, we draw support from the Court's statement in *Young* that "[t]he situation would be quite different if the ordinance had the effect of suppressing, or greatly restricting access to, lawful speech." 427 U.S. at 71 n. 35, 96 S.Ct. at 2453 n. 35. *See Basiardanes v. City of Galveston*, 682 F.2d 1203, 1214 (5th Cir.1982) (expanding on footnote in *Young*, court noted that permitted locations were "among warehouses, shipyards, undeveloped areas, and swamps.").

lation is constitutional only if (1) it is within the constitutional power of the government; (2) it furthers an important or substantial governmental interest; (3) the governmental interest is unrelated to the suppression of free speech; and (4) the incidental restriction on first amendment freedom is no greater than essential to further that interest. *O'Brien*, 391 U.S. at 377, 88 S.Ct. at 1679. Here, Renton bears the burden of proving that the elements of this test are satisfied. *See First National Bank v. Bellotti*, 435 U.S. 765, 786, 98 S.Ct. 1407, 1421, 55 L.Ed.2d 707 (1978).

IV

STANDARD OF REVIEW

■ The parties stipulated that the record developed at the preliminary injunction stage would serve as the record upon which the court could decide the permanent injunction. The parties in effect submitted the case for trial upon an agreed record, the district court resolving any disputed issues of fact presented by the record.[12] We review these factual determinations under a clearly erroneous standard. We do not, however, apply a clearly erroneous standard of review to the district court's findings on the *O'Brien* factors because our recent decision in *United States v. McConney*, 728 F.2d 1195 (9th Cir.) (en banc), *cert. denied*, ── U.S. ──, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984), and the Supreme Court's recent decision in *Bose Corp. v.*

*Consumers Union of United States, Inc.*, ── U.S. ──, 104 S.Ct. 1949, 80 L.Ed.2d 502 (1984), require us to review them *de novo*.

In *McConney* we held that mixed questions of fact and law are subject to *de novo* review when they require us "to exercise judgment about the values that animate legal principles ...." 728 F.2d at 1202. In no area of law is the consideration of the values behind legal principles more important than when state action threatens to infringe on activity protected by the first amendment.

In *Bose Corp.*, the Supreme Court held that a trial court's finding as to "actual malice" in a libel case was subject to *de novo* review. The question as framed by the Court was "whether the evidence in the record ... is of the convincing clarity required to strip the utterance of First Amendment protection.... Judges ... must independently decide whether the evidence in the record is sufficient to cross the constitutional threshold...." 104 S.Ct. at 1965. The Court recognized that it "has regularly conducted an independent review of the record both to be sure that the speech in question actually falls within the protected category and to confine the perimeters of any unprotected category within acceptably narrow limits in an effort to ensure that protected expression will not be inhibited." *Id.* 104 S.Ct. at 1962. We have a similar duty in the case at hand.[13]

---

**12.** In *Starsky v. Williams*, 512 F.2d 109 (9th Cir.1975), we recognized,

"[W]hile summary judgment cannot be granted where there are questions of fact to be disposed of, even by consent of all concerned, there is no reason why parties cannot agree to try a case upon affidavits, admissions and agreed documents. In effect, that is what was done here. No objection whatever was made at the time of submission that there were questions of fact which could not be decided upon the evidence before the trial court." *Id.* at 113 (quoting *Gillespie v. Norris*, 231 F.2d 881, 883–84 (9th Cir.1956)). This statement applies here as well.

Playtime asserts that summary judgment was improper because it relied on the district court's findings on the preliminary injunction in entering into the stipulation. Thus, Playtime argues, when the district court inexplicably changed its

findings of fact, it created material disputed issues of fact that would make summary judgment improper. Although we sympathize with Playtime's argument, we agree with Renton. Playtime made a tactical choice not to submit further documentation or testimony and cannot now complain.

**13.** We will not deal with the first factor of *United States v. O'Brien*, 391 U.S. 367, 377, 88 S.Ct. 1673, 1679, 20 L.Ed.2d 672 (1968), in detail, for all agree that such a zoning ordinance is within the constitutional power of the government. *See Berman v. Parker*, 348 U.S. 26, 32–33, 75 S.Ct. 98, 102–103, 99 L.Ed. 27 (1954); *see also Schad v. Borough of Mount Ephraim*, 452 U.S. 61, 68, 101 S.Ct. 2176, 2182, 68 L.Ed.2d 671 (1981).

**536**

## V

## APPLICATION OF THE O'BRIEN FACTORS

### A. Renton Has Not Shown a Substantial Governmental Interest.

■ The record presented by Renton to support its asserted interest in enacting the zoning ordinance is very thin. The ordinance itself contains only conclusory statements. No record of the public hearing was made or preserved. City officials who attended testified that the hearing was held, but said little else. To uphold the substantiality of the governmental interest, the district court had to justify Renton's reliance on the experiences of other towns and cities, particularly Detroit and Seattle, citing the Seventh Circuit's decision in *Genusa v. City of Peoria*, 619 F.2d 1203 (7th Cir.1980).

In *Genusa*, the court relied on *Young* to uphold a provision of a zoning ordinance which required, just as the Detroit ordinance did, the dispersal of adult uses. *Id.* at 1211. Although the Renton ordinance *purports* to copy Detroit's and Seattle's, it does not solve the same problem in the same manner. The Detroit ordinance was intended to disperse adult theaters throughout the city so that no one district would deteriorate due to a concentration of such theaters. The Seattle ordinance, by contrast, was intended to *concentrate* the theaters in one place so that the whole city would not bear the effects of them. The Renton ordinance is allegedly aimed at protecting certain uses—schools, parks, churches and residential areas—from the perceived unfavorable effects of an adult theater.

This court and the Supreme Court require Renton to justify its ordinance in the context of *Renton's* problems—not Seattle's or Detroit's problems. In *Young*, the

plurality found that the record disclosed a factual basis for the council's determinations, 427 U.S. at 71, 96 S.Ct. at 2452, and Justice Powell cited "reports and affidavits from sociologists and urban planning experts, as well as some laymen." *Id.* at 81 n. 4, 96 S.Ct. at 2457–58 n. 4 (Powell, J., concurring).[14] Similarly, in the Seattle case, the zoning ordinance was the "culmination of a long period of study and discussion." *Northend Cinema, Inc. v. City of Seattle*, 90 Wash.2d 709, 711, 585 P.2d 1153 (1978), *cert. denied*, 441 U.S. 945, 99 S.Ct. 2166, 60 L.Ed.2d 1048 (1979). By contrast, in *Schad*, which invalidated an ordinance prohibiting live nude dancing in the town, the Supreme Court stressed that the Borough had not adequately justified its substantial restriction by evidence in the record. 452 U.S. at 72, 101 S.Ct. at 2184. The Court cited by way of contrast the full record made in *Young*. *Id.*

In *Kuzinich v. County of Santa Clara*, 689 F.2d 1345 (9th Cir.1982), we reversed summary judgment validating a zoning ordinance regulating adult theaters and bookstores in part because of lack of evidence. We said, "While the ordinance here was said to be copied after the Detroit ordinance validated in *Young*, we find very little evidence bearing on the concentration of adult enterprises." *Id.* at 1348. We found that "[c]onclusions alone support the thesis that adult bookstores and movie theaters have any different impact upon traffic and littering than other kinds of businesses have." *Id.* Further, in *Ebel v. City of Corona*, 698 F.2d 390, 393 (9th Cir.1983), we remanded for "factual findings on the validity of the city's assertions of harm." *Accord Basiardanes v. City of Galveston*, 682 F.2d 1203, 1215 (5th Cir.1982) (contrasting record in *Young* against "empty" record before it); *Fantasy Book Shop, Inc. v. City of Boston*, 652 F.2d 1115, 1125 (1st

---

**14.** The Court in *Schad* recognized that ordinances must address particular problems, citing Justice Powell's concurrence in *Young*:

Emphasizing that the restriction was tailored to the particular problem identified by the City Council, [Justice Powell] acknowledged that "[t]he case would have present[ed] a dif-

ferent situation had Detroit brought within the ordinance types of theaters that had not been shown to contribute to the deterioration of surrounding areas."

*Schad*, 452 U.S. at 72 n. 10, 101 S.Ct. at 2184 n. 10 (quoting *Young*, 427 U.S. at 82, 96 S.Ct. at 2458 (Powell, J., concurring)).

Cir.1981) (remanding for factual findings to support city's assertions, stating, "the government bears the burden of proving some empirical basis for the projections on which it relies."); *Avalon Cinema Corp. v. Thompson,* 667 F.2d 659, 661–62 (8th Cir. 1981) (en banc) (contrasting *Young* and requiring city to present evidence to justify its restriction); *Keego Harbor Co. v. City of Keego Harbor,* 657 F.2d 94, 98 (6th Cir.1981) (reversing because city's post hoc justifications failed to support ordinance).

As in *Kuzinich,* we find Renton's justifications conclusory and speculative. Renton has not studied the effects of adult theaters and applied any such findings to the particular problems or needs of Renton. The studies done by Detroit on the problems of concentrating adult uses are simply not relevant to the concerns of the Renton ordinance—the proximity of adult theaters to certain other uses. We do not say that Renton cannot use the experiences of other cities as part of the relevant evidence upon which to base its actions, but in this case those experiences simply are not sufficient to sustain Renton's burden of showing a significant governmental interest.

B. *Renton Has Not Proved That The Regulation is Unrelated to the Suppression of Speech.*

■ Renton must prove that its zoning decision was "motivated by a desire to further a compelling governmental interest unrelated to the suppression of free expres-

sion." *Tovar v. Billmeyer,* 721 F.2d 1260, 1266 (9th Cir.1983); *see also Lydo Enterprises v. City of Las Vegas,* 745 F.2d 1211, 1214–1215 (9th Cir.1984).[15] Both the magistrate and the district court recognized that many of the stated reasons for the ordinance were no more than expressions of dislike for the subject matter.[16] The record before us raises at least an inference that a motivating factor behind the ordinance was suppression of the content of the speech as opposed merely to regulating the effects of the mode of that speech. *See Tovar,* 721 F.2d at 1266. The record does not reveal that Renton has rebutted the inference. As discussed above, the City had little empirical evidence before it to demonstrate the alleged deleterious effects of adult theaters.

The district court upheld the ordinance on the ground that Renton's *predominate* concerns were legitimate. But that is not the test in this Circuit. Where mixed motives are apparent, as they are here, *Tovar* requires that the court determine whether "a *motivating factor* in the zoning decision was to restrict plaintiffs' exercise of first amendment rights." *Id.* at 1266 (emphasis added).[17]

■ Neither the facts before the Renton City Council nor those presented to the district court appear to justify the ordinance's restriction on protected expression. Renton has not shown that it was not motivated by a desire to suppress *speech* based on its content.[18] Given the inferences

---

**15.** In *Lydo Enterprises v. City of Las Vegas,* 745 F.2d 1211 (9th Cir.1984), the court, citing *Schad,* 452 U.S. at 67–70, 101 S.Ct. at 2181–2184, and *O'Brien,* 391 U.S. at 377, 88 S.Ct. at 1679, reaffirmed that an ordinance that restricts free expression must further "a substantial governmental interest unrelated to the suppression of free expression." 745 F.2d at 1215. In that case, in the context of a preliminary injunction, the court held that the plaintiffs had not developed an adequate record to enjoin enforcement of the ordinance. ·

**16.** *See supra* note 3.

**17.** The *Tovar* test is consistent with other constitutional cases regarding land use decisions. *See, e.g., Village of Arlington Heights v. Metropolitan Housing Development Corp.,* 429 U.S.

252, 266, 97 S.Ct. 555, 564, 50 L.Ed.2d 450 (1977) ("[d]etermining whether invidious discriminatory purpose was *a motivating factor* demands a sensitive inquiry into such circumstantial and direct evidence of intent as may be available" (emphasis added)).

**18.** The recent Supreme Court decision in *Members of City Council v. Taxpayers for Vincent,* —— U.S. ——, 104 S.Ct. 2118, 80 L.Ed.2d 772 (1984), upholding an ordinance prohibiting the posting of signs on public property, lends support to the result we reach in this case. In *Vincent,* the ordinance applied to *all* signs, regardless of the content of their message. The court noted there was "no claim that the ordinance was designed to suppress certain ideas that the City finds distasteful." *Id.* 104 S.Ct. at 2126.

raised in the record before us, we remand for reconsideration, particularly in light of *Tovar*.

■ Renton argues, additionally, that even if it has effectively banned adult theaters, the ordinance is constitutional because similar adult theaters exist in nearby Seattle. The Supreme Court rejected such an argument in *Schad* and we reject it here as well. " '[O]ne is not to have the exercise of his liberty of expression in appropriate places abridged on the plea that it may be exercised in some other place.' " *Schad*, 452 U.S. at 76–77, 101 S.Ct. at 2187 (quoting *Schneider v. New Jersey*, 308 U.S. 147, 163, 60 S.Ct. 146, 151, 84 L.Ed. 155 (1939)).[19]

## VI

## COSTS AND FEES ON SECOND REMOVAL

■ In number 83–3980 Renton claims it is entitled to fees under 28 U.S.C. § 1447(c), because Playtime's second removal was in bad faith.[20] We review the court's finding of an absence of bad faith under the clearly erroneous standard. *See Dogherra v. Safeway Stores, Inc.*, 679 F.2d 1293, 1298 (9th Cir.), *cert. denied*, 459 U.S. 990, 103 S.Ct. 346, 74 L.Ed.2d 386 (1982).

■ Renton stresses that this was the second removal petition, but fails to mention that the first was remanded because the district court concluded that the City's complaint failed to state a justiciable contro-

versy. The district court never reached the second step of deciding if the case could be removed if it had stated a cause of action. The second removal was on the basis of Renton's amended complaint, which did state a cause of action. This complaint, however, sought enforcement of state laws that had been declared unconstitutional by other courts. Under the circumstances, the district court did not err in finding no bad faith.

## VII

## CONCLUSION

The City failed to sustain its burden of justifying its ordinance under the test of *United States v. O'Brien*, 391 U.S. 367, 377, 88 S.Ct. 1673, 1679, 20 L.Ed.2d 672 (1968), as applied in similar cases by the Supreme Court and this court. Accordingly, we reverse and remand case number 83–3805 for proceedings consistent with this opinion.

The district court did not clearly err in denying the City's motion for costs and fees in connection with the second removal. Accordingly, we affirm in case number 83–3980.

AFFIRMED in part, REVERSED in part, and REMANDED.

---

**19.** In view of our holding, we need not address the overbreadth or vagueness issues raised by Playtime. Playtime also argues that the fact that Renton's ordinance is directed only at adult theatres and not other adult uses is a denial of equal protection. We do not denigrate the validity of this issue, but need not reach it.

**20.** The district court's ruling was oral and no written opinion or docket entry was made. Although Fed.R.App.P. 4(a)(2) validates a notice of appeal filed after announcement of a decision or order, it contemplates the entry of a judgment under Fed.R.Civ.P. 58, 79. No such entry was made in this case; thus, under Rule 4(a)(2), the notice of appeal has no date of entry to which to conform.

Nonetheless we conclude that we have jurisdiction over this appeal under *Bankers Trust Co. v. Mallis*, 435 U.S. 381, 98 S.Ct. 1117, 55 L.Ed.2d 357 (1978). In *Bankers Trust*, the Supreme

Court held that the parties to an appeal could waive Rule 58's separate judgment requirement when the district court clearly evidenced its intent that its order would represent the final decision in the case and the parties did not object to the absence of a separate judgment. *Id.* at 387–88, 98 S.Ct. at 1121–22. We find those factors present here. The remand order was entered in the docket and no further proceedings could have existed in federal court. Neither party has objected to the lack of a separate judgment here. Although the district court's order in *Bankers Trust* was contained in a written opinion, we do not find that fact controlling except as it bears on the clarity of the court's intent. The transcript of the hearing on the remand leaves no doubt as to the district court's intent. Thus, the oral decision was an appealable order.