**Helen EBEL, Plaintiff-Appellee,**

**v.**

**CITY OF CORONA, a municipal corporation; William Ketteman, Planning Director of the City of Corona; and B. Talbert, Chief of Police of the City of Corona, Defendants-Appellants.**

**Nos. 84–5688, 84–5785.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 2, 1985.

Decided Aug. 1, 1985.

As Amended Sept. 26, 1985.

Roger Jon Diamond, Hecht, Diamond & Greenfield, Pacific Palisades, Cal., for plaintiff-appellee.

Meredith A. Jury, Best, Best & Krieger, Riverside, Cal., for defendants-appellants.

Before GOODWIN, HUG and BOO-CHEVER, Circuit Judges.

PER CURIAM.

The City of Corona appeals the entry of a permanent injunction against enforcement of its adult-use zoning ordinance with regard to Helen Ebel's adult bookstore. Because the district court applied the correct law and its findings were not clearly erroneous, we affirm and remand for computation of attorney's fees.

At the time that Ebel signed a five-year lease and opened an adult bookstore in Corona, California, such businesses were permitted under Corona zoning ordinances. On July 1, 1981, only days after Ebel opened for business, the City adopted an ordinance which banned all adult bookstores in the City for a four-month moratorium period. After closing her business in compliance with the ordinance, Ebel obtained a temporary restraining order against its enforcement.

Meanwhile, on September 16 and October 7, 1981, the City adopted permanent ordinances which regulated the location of adult bookstores and similar businesses. Those ordinances were adopted after the Planning Commission and City Council held public hearings and considered community reaction directed primarily at operation of Ebel's bookstore.

As we explained in *Ebel v. City of Corona,* 698 F.2d 390, 391–92 (9th Cir.1983) (*Ebel I*), the ordinances prohibit defined adult uses in all parts of the city except two commercial zones. In those zones, such uses are permitted only if they meet several location criteria: not abutting a residential zone or use; not within 750 feet

of a school, church, park or other recreational facility; and not within 500 feet of another adult business. The ordinance allows an amortization period of 120 days, 90 days or 60 days, depending upon whether a business had been lawfully operating for six months, 3–6 months, or less than three months as of July 1, 1981.

On November 16, 1981, the district court entered a preliminary injunction against enforcement of the ordinances against Ebel. When that injunction was later dissolved, Ebel obtained an injunction pending appeal from this court. In an earlier appeal, this court held that the district court improperly dissolved the preliminary injunction. *Ebel I*, 698 F.2d at 392–93. As a result of these injunctions and a permanent injunction entered by the district court on February 9, 1984, Ebel has been able to continue operations. In entering that permanent injunction the court found the ordinances to be unconstitutional as applied to Ebel. The city appeals.

■ This court applies the factors enunciated in *United States v. O'Brien*, 391 U.S. 367, 377, 88 S.Ct. 1673, 1679, 20 L.Ed.2d 672 (1968), to test the constitutionality of adult-use zoning ordinances. *Playtime Theaters, Inc. v. City of Renton*, 748 F.2d 527 (9th Cir.1984), *prob. juris. noted,* —— U.S. ——, 105 S.Ct. 2015, 85 L.Ed.2d 297 (1985). Under *O'Brien* and *Playtime,* such ordinances are constitutional only if (1) they are within the constitutional power of the government; (2) they further an important or substantial government interest; (3) the government interest is unrelated to the suppression of free speech; and (4) the incidental restriction on First Amendment freedom is no greater than essential to further the government's interest. *Playtime,* 748 F.2d at 534–35, *citing O'Brien,* 391 U.S. at 377, 88 S.Ct. at 1679.

The Corona ordinance passes constitutional muster under the first *O'Brien* test. The government has the power to establish reasonable land use and zoning restrictions in the interest of public safety and welfare. *Village of Belle Terre v. Boraas,* 416 U.S. 1, 94 S.Ct. 1536, 39 L.Ed.2d 797 (1974);

*Village of Euclid v. Ambler Realty Co.,* 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303 (1926).

*O'Brien* further requires that the express or implied motivation underlying the ordinance be unrelated to the suppression of protected speech and that there be a close connection between the asserted interest and the alleged harm. *Playtime,* 748 F.2d at 535; *see also Young v. American Mini Theatres, Inc.,* 427 U.S. 50, 80–82, 96 S.Ct. 2440, 2457–2458, 49 L.Ed.2d 310 (1976) (Powell, J. concurring). In examining motivation, the Supreme Court in *American Mini Theatres* considered the city's evidence of the problems of concentration of adult businesses and the city's genuine desire to prevent neighborhood deterioration. *American Mini Theatres,* 427 U.S. at 56 & n. 11, 71 & n. 34, 96 S.Ct. at 2445 & n. 11, 2453 & n. 34. Some courts which have considered ordinances modeled on the *American Mini Theatres* ordinance have been less satisfied with the rationality of the municipality's purpose or the closeness of the fit between the asserted purpose and the restriction on adult businesses. *See Schad v. Borough of Mt. Ephraim,* 452 U.S. 61, 72–74, 101 S.Ct. 2176, 2184–2186, 68 L.Ed.2d 671 (1981) (justifications were unsupported by evidence at trial); *Playtime,* 748 F.2d at 537 (justifications were conclusory and speculative because city failed to apply justifications to the particular problems or needs of the city); *Kuzinich v. Santa Clara County,* 689 F.2d 1345, 1348 (9th Cir.1982) (ordinance not closely enough related to county's purpose in preventing litter and controlling traffic); *CLR Corp. v. Henline,* 702 F.2d 637, 639 (6th Cir.1983) (city failed to conduct research or to show a close connection between the ordinance and prevention of urban blight).

Several courts have expressed skepticism about a municipality's expressed justification for an ordinance where it was enacted at a time when the city was being introduced to its first adult business. *See Tovar v. Billmeyer,* 721 F.2d 1260, 1264–65 (9th Cir.1983) (new interpretation of zoning

ordinance made after application for adult business permit raised questions about motivation), *cert. denied,* — U.S. —, 105 S.Ct. 223, 83 L.Ed.2d 152 (1984); *Basiardanes v. City of Galveston,* 682 F.2d 1203, 1216 (5th Cir.1982) (timing of enactment following proposed opening of an adult theater suggested that city's concern was not with urban deterioration as asserted); *Avalon Cinema Corp. v. Thompson,* 667 F.2d 659, 661 (8th Cir.1981) (motivation was the imminent opening of the city's first adult business, not the city's own unique problems or past history).

The district court examined Corona's motivations in detail. It found that the City's purpose was not to "drive [Ebel] out of town." The City intended to "keep this lady as far away from the schools and churches and parks and residences as they thought they could within the Constitution," to protect "the social mores of [the] community [and to] keep [such businesses] under whatever control the City can." The Court nevertheless found that Ebel did not "substantially subvert" the purpose of the ordinance and that there was only a "minimal effect upon the City's right to preserve the neighborhood or protect the children or maintain community standards." Accordingly, although the court concluded that the City's purpose in enacting the ordinance was defensible, it also concluded that Ebel's business did not subvert that purpose. A city's purpose in enacting an ordinance may be to prevent deterioration of neighborhoods and corruption of community morals. *See, e.g., American Mini Theatres,* 427 U.S. at 54, 96 S.Ct. at 2444. The City did not prove that Ebel's business led to any of these evils. The court's conclusion is correct, therefore, that the City did not satisfy its burden of demonstrating sufficient harm to the City to justify applying the new ordinance to Ebel's existing business. *See, e.g., Schad,* 452 U.S. at 70 & nn. 8, 9, 101 S.Ct. at 2183 & nn. 8, 9.

Under *Playtime,* the Corona ordinance must be no more restrictive of protected communication than is necessary to protect the City's legitimate interests. The Supreme Court has upheld restrictions which limit the location of adult businesses by reference to specified commercial or other adult uses. *See American Mini Theatres,* 427 U.S. at 52, 96 S.Ct. at 2443–44; *see also Genusa v. City of Peoria,* 619 F.2d 1203, 1211 (7th Cir.1980); *Walnut Properties, Inc. v. City Council of Long Beach,* 100 Cal.App.3d 1018, 161 Cal.Rptr. 411, 414, *cert. denied,* 449 U.S. 836, 101 S.Ct. 109, 66 L.Ed.2d 42 (1980). This court has struck down similar restrictions when their effect was to preclude adult businesses from operating anywhere within the jurisdiction. *See Playtime,* 748 F.2d at 538, citing *Schad,* 452 U.S. at 76–77, 101 S.Ct. at 2186–2187; *see also Basiardanes,* 682 F.2d at 1213–14; *Keego Harbor Co. v. City of Keego Harbor,* 657 F.2d 94, 95–98 (6th Cir.1981). The Supreme Court in *American Mini Theatres* explained that the constitutionality of a location-specific restriction is dependent upon a factual finding of the effect of that restriction on the particular community. *American Mini Theatres,* 427 U.S. at 71 n. 35, 96 S.Ct. at 2453 n. 35. While the *American Mini Theatres* court did not have to decide the reasonableness of the location-specific element of the Detroit ordinance, *id.* at 52 n. 2, 96 S.Ct. at 2444 n. 2, subsequent courts have applied *American Mini Theatres* to location-specific restrictions. *See Keego Harbor,* 657 F.2d at 97–98. Where adult use ordinances have been upheld, the courts have found that alternative establishments or relocation sites were readily available in the same community. *American Mini Theatres,* 427 U.S. at 71 n. 35, 96 S.Ct. at 2452 n. 35; *Hart Book Stores Inc. v. Edmisten,* 612 F.2d 821, 827 (4th Cir.1979), *cert. denied,* 447 U.S. 929, 100 S.Ct. 3028, 65 L.Ed.2d 1124 (1980); *Walnut Properties,* 161 Cal. Rptr. at 414.

■ The district court held that the restrictions which limit the proximity of adult uses to other land uses have the effect of substantially restricting access to adult materials in Corona. It found that Ebel had met her burden by making an effort to find an acceptable relocation site. But, the court found that enforcement of the ordi-

nance would have forced Ebel to move her business out of Corona because it was "very doubtful that there were ... practically effective alternative locations," in which Ebel could relocate her business. That finding was not clearly erroneous. The district court correctly ruled that the lack of such alternate sites makes the Corona ordinances unconstitutional as applied.

The district court concluded that Ebel was entitled to the protection of a grandparent provision which would permit her to operate as non-conforming use despite the ordinance. The court noted that, "[i]n the [*American Mini Theatres*] case, the court took great comfort in the fact that there was a [grandparent] clause with respect to [businesses] that were already in place." Courts which have addressed the application of a grandparent provision have all noted that the presence of a grandparent clause may sustain an ordinance's constitutionality as applied where plaintiffs cannot otherwise show a significant effect on existing businesses. *See Genusa*, 619 F.2d at 1210–12 & n. 18 (ordinance constitutional with respect to existing businesses because of grandparent clause); *Walnut Properties*, 161 Cal.Rptr. at 414 (ordinance affected only new businesses and contained an exception for non-conforming uses).

■ Instead of providing grandparent protection, the Corona ordinance provides an amortization period. But courts have struck down ordinances similar to Corona's despite longer amortization periods for non-complying establishments. *See e.g., Alexander v. City of Minneapolis*, 698 F.2d 936, 937 (8th Cir.1983) (four-year grace period); *but see Hart Book Stores*, 612 F.2d at 825 (upholding non-location-specific ordinance with a six-month amortization period). The burden on existing businesses determines whether an amortization period is reasonable. *See Hart Book Stores*, 612 F.2d at 830. Where a business is permitted to continue operations but with different products, a shorter period may be sufficient. *See Northend Cinema, Inc. v. City of Seattle*, 90 Wash.2d 709, 585 P.2d 1153, 1159–60 (1978) (sustaining three-month

amortization where adult theater could continue business as a non-adult theater), *cert. denied*, 441 U.S. 946, 99 S.Ct. 2166, 60 L.Ed.2d 1048 (1979). In *Northend*, the Washington Supreme Court considered the particular circumstances of the non-conforming business, its lease obligation and the ease by which it could convert to a non-adult business as factors in upholding a three-month amortization.

■ The district court found that the 60-day amortization period afforded by the ordinance "is not satisfactory in this instance," in light of the length of Ebel's lease and the financial investment she had made in her bookstore. Applying the *Northend* balancing to this case, the district court did not err in holding the 60-day amortization unreasonable.

Because the district court's findings were not clearly erroneous and because its conclusions of law were correct, we affirm the granting of a permanent injunction. Ebel is awarded her attorney's fees on appeal. The case is remanded to the district court for determination of the amount of such award. We therefore dismiss as moot the appeal of attorney fees in No. 84–5785.

Affirmed.