Karen CHRISTY, individually and as, sole shareholder of Unique Creations, Inc., a Michigan corporation, Plaintiff,

v.

CITY OF ANN ARBOR, a municipal corporation, Edward Pierce, individually and as Mayor of the City of Ann Arbor, and William Corbett, individually and as Chief of Police of the City of Ann Arbor, Defendants.

Civ. A. 85CV–60352–AA.

United States District Court,
E.D. Michigan, S.D.

Jan. 15, 1986.

Anita McIntyre, Grosse Pointe, Mich., Michael Null, Chicago, Ill., for plaintiff.

R. Bruce Laidlaw, City Atty., Ann Arbor, Mich., for defendants.

## MEMORANDUM OPINION AND ORDER

JOINER, District Judge.

This matter comes before the court on plaintiff's motion for a preliminary injunction. Plaintiff challenges the Ann Arbor City zoning ordinance as it pertains to adult bookstores. Plaintiff desires to open an adult bookstore in Ann Arbor and claims that the Ann Arbor zoning ordinance unconstitutionally prevents her from doing so. Plaintiff asks the court to temporarily enjoin the enforcement of the Ann Arbor zoning ordinance until this case can be decided on the merits.

There are two counts to the plaintiff's complaint. The first alleges that the zoning ordinances in question are unconstitutionally restrictive. Count II states that the Ann Arbor regulation is unconstitutionally vague and overbroad. Jurisdiction is based on 42 U.S.C. § 1983 and the First, Fifth, and Fourteenth Amendments of the United States Constitution. For the reasons stated below, the plaintiff's motion for a preliminary injunction is denied.

FACTS

The plaintiff claims to have obtained a lease on a building in Ann Arbor with the intention of opening an adult bookstore. Plaintiff admits that the proposed site is not an area zoned for adult bookstores. She also admits that the bookstore will sell adult materials, as they are defined in the Ann Arbor zoning ordinance. Therefore,

without a favorable ruling from this court, the plaintiff will be subject to civil liability if she opens her bookstore.

There is only one provision in the Ann Arbor City zoning code that is challenged by the plaintiff. The contested section, § 5:50, says:

5:50 *Regulations Concerning Adult Entertainment Businesses.*

(a) Adult entertainment business: One or a combination of more than one of the following types of businesses: adult bookstore, adult motion picture theater, adult mini-motion picture theater, adult personal service business, adult novelty business.

(b) Adult bookstore: An establishment having as a principal activity the sale of books, magazines, newspapers, video tapes, video discs and motion picture films which are characterized by their emphasis on portrayals of human genitals and pubic regions or acts of human masturbation, sexual intercourse or sodomy.

(c) Adult motion picture theater: An enclosed building with a capacity of 50 or more persons having as a principal activity displaying motion pictures characterized by their emphasis on portrayals of human genitals and pubic regions or acts of human masturbation, sexual intercourse, or sodomy for observation by patrons therein.

(d) Adult mini-motion picture theater: An enclosed building having as a principal activity the presentating [sic] of material characterized by emphasis on portrayals of human genitals and pubic regions or actions of human masturbation, sexual intercourse or sodomy for observation by patrons therein in individual viewing booths.

(e) Adult novelty business: A business which has as a principal activity the sale of devices of simulated human genitals or devices designed for sexual stimulation.

(f) Adult personal service business: A business having as a principal activity a person of one sex, while nude or partially nude, providing personal services for a person of the other sex on an individual basis in a closed room. It includes, but is not limited to, the following activities and services: massage parlors, exotic rubs, modeling studios, body painting studios, wrestling studios, individual theatrical performances. It does not include activities performed by persons pursuant to, and in accordance with, licenses issued to such persons by the State of Michigan.

(g) Partially nude: Having any or all of the following bodily parts exposed: buttocks, genitals, pubic area or female breasts.

(h) Principal activity: A use accounting for more than 20 per cent of a business' stock in trade, display space, floor space or movie display time per month.

(2) Locations of Adult Entertainment Businesses. An adult entertainment business may be located in the City only in accordance with the following restrictions:

(a) No such businesss shall be located within 700 feet of a district which, pursuant to this Chapter, has been classified R1A, R1B, R1C, R2A, R2B, R3, R4A, R4B, R4C, R4C/D or R6.

(b) Such businesses shall only be located in a district classified pursuant to this Chapter as C2A.

(c) No such business shall be established within 700 feet of another adult entertainment business.

(3) Use Regulations.

(a) No person shall reside in or permit any person to reside in the premises of an adult entertainment business.

(b) No person shall operate an adult personal service business unless there is conspicuously posted in each room where such business is carried on a notice indicating the prices for all services performed.

The principal disputed factual issue in this motion is the number of legal locations for adult bookstores in the City. Plaintiff

relies upon the affidavit of a geographer to establish the lack of properly zoned places for adult bookstores. This geographer's calculations show that the total surface area of the city of Ann Arbor is 25.23 square miles. Out of this total, only .058 square miles, or $^{28}/_{100}$ of 1% of Ann Arbor, are available for locating an adult bookstore in compliance with § 5.50 of the Ann Arbor zoning ordinance.

The city of Ann Arbor responds that its ordinance is substantially different from those which have been successfully challenged in other cases. The primary difference is that § 5.50(1)(h) allows businesses to have up to 20% of their stock in trade, display space, floor space, or movie display time in adult materials, without subjecting that business to regulation under the zoning laws.

The city of Ann Arbor has two general areas which meet the requirements of its zoning ordinance. Neither party specifies how many adult bookstores could be placed in these two locations. The City asserts that there are numerous locations available. There are two existing adult businesses already located in the City.

Plaintiff's proposed location is at 207 North Main Street, which is inside a C2A zone. However, the location does not meet the other spacing requirements of the ordinance. Plaintiff states that she intends to sell more than the allowable 20% of adult materials in her store and will therefore be subject to the restrictions of the ordinance.

LEGAL ISSUES

■ There are four basic requirements that must be met for the plaintiff to obtain a preliminary injunction. *Pascoe v. I.R.S.*, 580 F.Supp. 649 (E.D.Mich.1984); *aff'd mem.*, 755 F.2d 932 (6th Cir.1985). A party seeking a preliminary injunction must demonstrate (1) a likelihood of prevailing on the merits, (2) that a failure to grant the request will result in irreparable harm, (3) that the balance of hardships should the injunction be granted versus if it is denied favors the party seeking relief, and (4) that public policy militates in favor of the party seeking relief. *Id.* at 651. If plaintiff can

meet these requirements on either of the two counts in her complaint, then she is entitled to a preliminary injunction.

## OVERBROADNESS AND VAGUENESS

■ Count II of the complaint charges that the zoning ordinance is unconstitutionally overbroad and vague. The leading case on the effects of zoning restrictions upon first amendment rights is *Young v. American Mini Theater, Inc.*, 427 U.S. 50, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976). The Supreme Court in *Young* considered the constitutional challenge of two adult movie theaters to zoning restrictions. In *Young*, the city of Detroit enacted an ordinance that required all adult establishments to be 1,000 feet or more from any other regulated use (which included other uses besides adult businesses) and more than 500 feet from any residential area. The term "adult" was defined in the ordinance in broad terms. The ordinances were adopted to combat the negative effects that concentrations of adult bookstores have upon the quality of neighborhoods in which they are located.

Five justices addressed the issue of the plaintiffs' standing to challenge the ordinance as unconstitutionally vague. They held that there was no uncertainty about the application of the ordinances to the plaintiffs because both theaters proposed to offer adult fare on a regular basis. *Young*, 427 U.S. at 59, 96 S.Ct. at 2446. They rejected plaintiffs' argument that they ought to be able to raise the vagueness issue because the ordinances affected communications protected by the first amendment. The court noted that there was an exception to this general rule which gave parties whose first amendment rights had not been affected by the ordinance standing to challenge its constitutionality. Nevertheless, the court continued, if the ordinance's deterrent effect on legitimate expression was not substantial and if the ordinance was readily subject to a narrowing construction by the state courts, then the litigant would not be permitted to as-

sert the rights of third parties. *Id.* at 60, 96 S.Ct. at 2447.

The court decided that the Detroit ordinances had little deterrent effect on the exhibition of films protected by the first amendment. Moreover, in cases where there was doubt about the application of the ordinance, the Supreme Court believed that state courts could give a narrowing construction to it that would sufficiently reduce the uncertainty.

Applying this analysis to the facts of these cases, there is no doubt that the type and quantity of materials which plaintiff seeks to sell fall within the prohibitions of the Ann Arbor ordinance. Thus, the plaintiff is in the same position as the plaintiffs in *Young;* there is no uncertainty that this ordinance applies to her potential bookstore. Plaintiff must fall within the bounds of the exception stated in *Young* if she is to prevail. Plaintiff must establish that these ordinances have a substantial deterrent effect on protected speech or that they are not subject to a narrowing construction by the state courts. For similar reasons as the Supreme Court in *Young,* this court is not convinced that the ordinance in controversy here will have a significant deterrent effect on the sale of books protected by the first amendment.

Plaintiff's principal concerns about the ordinance's language are: how she will determine the amount of sexually explicit material she may have in stock before being considered an adult bookstore; whether nearby stores will suddenly decide to become competitors in the adult bookstore business and threaten her zoning permit by doing so; and how she will decide what constitutes adult material. On the basis of these claims, she contends that the ordinance is unconstitutionally vague.

From the facts alleged, however, the plaintiff will not be deterred much, if at all, by these problems. She has openly stated her desire to run a bookstore containing exclusively adult materials. If she obtains her zoning permit, the actions of new adult businesses are irrelevant because the new adult businesses will be the ones that will have to meet the zoning ordinance's restrictions to obtain a permit. There is also no reason that she could not seek state court decisions on these questions. Accordingly, the court believes that the plaintiff does not fall within the exception noted above and therefore lacks standing to challenge these ordinances as vague.

Plaintiff challenges the Ann Arbor ordinance as overbroad because it regulates businesses that carry more than 20%, but less than 100%, of their stock in trade, etc., in adult materials. Plaintiff argues that this is excessive regulation, declaring that a benchmark figure of more than 20% is required to pass constitutional muster in order to avoid deterring legitimate speech. There is no reason to believe that this plaintiff is affected by any alleged overbroadness in this ordinance. This is perfectly apparent from plaintiff's brief, where she claims that bookstore operators with less than an unspecified amount of sexually explicit materials may be subject to its regulations. Plaintiff does not argue that there is any likelihood that her store will fall within this category of bookstores.

In *Broadrick v. Oklahoma,* 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973), the Supreme Court noted that the overbreadth doctrine is "strong medicine" and ruled that substantial overbreadth is a requirement to invoke the doctrine. *Id.* at 613–15, 93 S.Ct. at 2916–18. The Court went on to say that it would invalidate statutes for overbreadth, "only when the flaw is a substantial concern in the context of the statute as a whole." *Id.* at 616 n. 14, 93 S.Ct. at 2918 n. 14.

The court believes that the flaws that exist in the Ann Arbor ordinance are insignificant compared to its overall impact. This ordinance clearly has not deterred the plaintiff from trying to open her bookstore, nor other nonadult bookstores in Ann Arbor from carrying some adult materials. The court refuses to embrace plaintiff's speculation that substantial numbers of unknown businesses are being deprived of the opportunity to carry slightly more than 20% of their stock in trade, etc., in adult

materials. The number of instances where this ordinance would be applied to such establishments is small in comparison to the number of applications to the law's legitimate targets. The court holds that the Ann Arbor zoning ordinance is not overbroad.

Accordingly, plaintiff's claims that these ordinances are vague and overbroad are rejected and Count II is dismissed.

UNCONSTITUTIONAL RESTRICTIVE-NESS

■ Count I of the plaintiff's complaint is again best addressed by the Supreme Court's analysis in *Young*, 427 U.S. at 63–73, 96 S.Ct. at 2448–2454. Plaintiff mounts an equal protection attack similar to that in *Young*. In *Young*, the plaintiffs argued that the ordinances impermissibly regulated free speech by letting municipalities zone the locations of adult movie theaters. The Supreme Court reviewed its prior cases on time, place and manner regulations. The plurality opinion stated that regulation of expressive activity, predicated in whole or in part on the content of the communication, was permissible for certain qualified areas of speech. Given that a line could be drawn on the basis of content without violating the government's obligation of neutrality in its regulation of protected communication, and society's lesser interest in adult-oriented materials, the plurality held that the line drawn by the city of Detroit in its zoning ordinances was justified by its interest in preserving the character of its neighborhoods. *Id.* at 71–73, 96 S.Ct. at 2452–2454. Thus, Detroit's desire that adult businesses be deconcentrated was accommodated.

In making this determination, however, the plurality left open an important loophole, the scope of which is disputed by the parties to this case. Footnote 35 of the *Young* opinion states that there is a possibility that certain regulations of the time, place, and manner of the distribution of adult materials could be unconstitutional. As the plurality noted,

> The situation would be quite different if the ordinance had the effect of sup-

pressing, or greatly restricting access to, lawful speech. Here, however, the District Court specifically found that "[t]he Ordinances do not affect the operation of existing establishments but only the location of new ones. There are myriad locations in the City of Detroit which must be over 1000 feet from existing regulated establishments. This burden on First Amendment rights is slight." [*Nortown Theatre, Inc. v. Gribbs*] 373 F.Supp. [363], at 370....

*Young*, 427 U.S. at 71–72 n. 35, 96 S.Ct. at 2452–2453 n. 35.

Justice Powell, a fifth vote, approved of this footnote. *Id.* at 79, 96 S.Ct. at 2456.

The plaintiff in this case argues that the effect of the Ann Arbor zoning ordinance is to suppress or greatly restrict access to adult materials. Plaintiff believes that the ordinance operates to reduce the number of locations below the "myriad" available to prospective owners in Detroit after the *Young* case. In the plaintiff's eyes, any ordinance which restricts the number of locations below this level must be declared unconstitutional.

Footnote 35 seems to embrace two concepts of first amendment freedoms. There is a right of the people to obtain the kind of adult materials that the plaintiff wishes to distribute. There is also a right of the plaintiff to express herself by distributing the books she wishes to sell. As Justice Powell notes in his concurring opinion in *Young*, both rights have been before the Supreme Court at different times. However, he went on to say that the principal first amendment concern is the need to maintain free access of the public to the expression. *Young*, at 77, 96 S.Ct. at 2455.

Several years later, the Supreme Court had the opportunity to review the effects of zoning ordinances on first amendment rights. *Schad v. Mount Ephraim*, 452 U.S. 61, 101 S.Ct. 2176, 68 L.Ed.2d 671 (1981). The borough of Mount Ephraim established zoning ordinances which effectively banned the exhibition of live nude dancing. When the operators of an adult

bookstore started exhibiting this type of dancing in coin operated viewing machines, they were charged and convicted of a criminal offense. The Supreme Court reversed.

The majority in *Schad* distinguished *Young*, saying that it was a case involving dispersal, not a ban, of adult businesses. Since the Mount Ephraim ordinance led to a total ban on live entertainment, including nude dancing, its impact on first amendment rights was much greater than in *Young*. *Schad*, 452 U.S. at 71 n. 10, 101 S.Ct. at 2184 n. 10.

The Supreme Court went on to hold that, in cases where a zoning ordinance imposed a total ban on first amendment activities, or severely restricted access to them, the ordinance must advance significant governmental interests without undue restraint of speech, or be struck down. *Id.* at 71–72, 101 S.Ct. at 2184–2185.

A variety of terms have been used to describe the governmental interest that must be shown in order to justify restrictions on first amendment rights. *United States v. O'Brien*, 391 U.S. 367, 376–77, 88 S.Ct. 1673, 1678–79, 20 L.Ed.2d 672 (1968). The burden of showing more than a rational relationship between the ordinance and the governmental interest rests upon the government. *Schad*, 452 U.S. at 72–73, 101 S.Ct. at 2184–2185. Evidence must be introduced to show that the asserted interest is valid and will be advanced by the ordinance. Moreover, the zoning ordinance must be narrowly drawn. *Id.* at 68, 101 S.Ct. at 2182.

These are the two legal standards which the court must use in deciding this case. The *Young* analysis applies where the municipality is attempting to disperse adult businesses to minimize their undesirable side effects on its neighborhoods. The standard of *Schad*, on the other hand, is appropriate where the ordinance operates to exclude "speech" (books, pictures or other expression) from the area. *Basiardanes v. City of Galveston*, 682 F.2d 1203, 1213–1214 (5th Cir.1982).

If, under *Young*, the court finds that the ordinance does not greatly restrict free speech, and the municipality makes some findings to support it, then that ends the inquiry into the constitutionality of the ordinance. However, if the ordinance greatly restricts free speech, then the *Schad* requirements must be satisfied if it is to pass constitutional muster.

The Sixth Circuit has recently decided two cases which bear directly on these issues. *See CLR Corp. v. Henline*, 702 F.2d 637 (6th Cir.1983); *Keego Harbor Co. v. City of Keego Harbor*, 657 F.2d 94 (6th Cir.1981). In *Henline*, the city of Wyoming, Michigan denied an adult bookstore owner's application for permission to open in the City at a location that violated its zoning ordinances. The Sixth Circuit struck down the ordinances, stating:

> The defendants have argued throughout this case that the Wyoming statute is constitutional because it is nearly identical to the statute upheld in *Young*. Both statutes impose 1000-foot and 500-foot spacing requirements on adult movie theaters and book stores although the requirements are triggered by one nearby restricted use in Wyoming versus two nearby restricted uses in Detroit. Despite the ordinance, Detroit contained a "myriad of locations" for such uses. In contrast, the impact of the Wyoming ordinance is to permit two to four restricted uses in a half-mile strip of the city. Like the Mt. Ephriam [sic] ordinance in *Schad* and unlike the Detroit ordinance in *Young*, the Wyoming ordinance *severely restricts* first amendment expression.
>
> Also like *Schad* but unlike *Young*, the defendants have failed to justify the infringement of constitutional rights by showing a compelling governmental interest. First, the Wyoming City Council made no factual findings that the spacing requirements would prevent urban blight. Wyoming need not have conducted its own research in this area. However, the district court found no evidence in City Council meetings or elsewhere that the ordinance was enacted *for the purpose of* preventing urban blight

through deconcentrating restricted uses. It is equally likely that Wyoming enacted the ordinance to prevent adult books [sic] from locating in the city. Second, and more importantly, assuming Wyoming's purpose was to deconcentrate restricted uses, the *effect* of the ordinance is to *concentrate* any adult bookstores and theaters in the city into a 2,500-foot frontage. We decline to find a compelling governmental interest to justify this statute when Wyoming cannot demonstrate even a rational relationship between the asserted purpose and the effect of the statute.

*Henline*, 702 F.2d at 639 (emphasis in original).

Two conclusions can be drawn from this opinion. The City government did not need to make its own factual findings that spacing requirements would prevent urban blight. It was enough to show that the ordinance was enacted to prevent this type of blight, or at least to show that the ordinance was not enacted to prevent adult books from being sold in the City. Moreover, if the possible locations available for adult facilities are concentrated in one area, this undercuts any deconcentration rationale allegedly behind the ordinance.

In *Keego Harbor Co. v. City of Keego Harbor*, 657 F.2d 94, the City adopted an ordinance which imposed restrictions upon the location of adult entertainment facilities. The effect of the restrictions was to ban adult businesses from locating in the City. The Sixth Circuit found the ordinances to be unconstitutionally restrictive of first amendment rights. The court noted that the *Young* opinion controlled only where the ordinance served to regulate the place of adult businesses, without greatly restricting access to lawful speech. Because the ordinances imposed a ban on adult facilities, the court found that *Young* was inapposite. Instead it looked to the then recently decided *Schad* case. The court of appeals found that the City had failed to make an evidentiary showing that there was a sufficient justification to further a substantial governmental interest.

In its holding, the court of appeals stated that:

In both *Young v. American Mini Theaters* and *Mount Ephraim* the Court looked first to the nature and extent of the zoning restriction. It then looked to the factual support for the restriction in order to determine whether the city had provided sufficient justification for imposing the restriction and whether the city had chosen the least restrictive alternative necessary to achieve the desired goals. When a city effectively zones protected activity out of the political entity, the justification required is more substantial than when the First Amendment burden is merely "incidental," as it was in *Young v. American Mini Theaters*.

*Keego Harbor Co. v. City of Keego Harbor*, 657 F.2d at 98. As this passage makes clear, the burden of proof placed upon the municipality varies with the level of restrictiveness of its ordinance. If the burden upon first amendment rights is "incidental", then the justification proffered by the municipality can be less substantial.

After reviewing these authorities and the evidence before it, the court finds that the Ann Arbor ordinance is not greatly restrictive of first amendment rights. Ann Arbor's unique provisions that allow businesses to have up to 20% of their stock in trade, etc., in adult materials, without imposing any zoning regulation, gives the public easy access to these materials. As Justice Powell noted in *Young*, the principal first amendment concern is the need to maintain free access of the public to these materials. *Young*, 427 U.S. at 77, 96 S.Ct. at 2455. The court is satisfied that the Ann Arbor ordinance meets this important obligation.

The Ann Arbor ordinance permits anyone to speak. By allowing stores to carry up to 20% adult wares, the ordinance guarantees the right of merchants to sell these materials. The city also shows that it has no evil intention to eliminate the sale of this kind of material. This answers the Sixth Circuit's concern that the City might have enacted the ordinance to prevent the sale of adult books. *Henline*, 702 F.2d at 639.

The 20% requirement provides a beneficial way for decentralization of the adult book business. By sanctioning the selling of adult books and other books together, the City has eliminated most of the well-known problems of urban blight that result from concentrations of these bookstores, without sacrificing its citizens' first amendment freedoms. There is no question that this ordinance allows a "myriad of locations" for the sale of adult books.

For those bookstores that wish to sell only adult books, thus violating the 20% requirement and subjecting themselves to regulation by the ordinance, the defendant City has provided two zones where these stores can locate. Plaintiff's evidence that these two zones comprise only a small percentage of the surface of the City is irrelevant. The relevant fact before the court is that the distribution of adult books is not limited by the ordinance authorizing zones for strictly adult stores. The court also notes that in an earlier case brought by this same plaintiff, a total of fourteen sites for adult bookstores were shown by the plaintiff to be available in the city of Ann Arbor. *See Christy Newsreel, Inc. v. City of Ann Arbor*, No. 83–1343, slip op. at 1 (E.D.Mich.1982), *aff'd*, 780 F.2d 1020 (6th Cir.1985). Furthermore, the City asserts that there are numerous locations within it which are available for adult bookstores. The ordinance does not constitute an absolute ban on adult businesses under *Schad.*

The court finds that the incidental impact of this ordinance upon first amendment rights requires a lesser burden of proof for the City to justify its ordinance. *Keego Harbor Co. v. City of Keego Harbor*, 657 F.2d at 98. The City has asserted that its purpose in passing this ordinance is to prevent the concentration of adult businesses and resultant urban blight. There is no requirement that the City actually make factual findings that such blight is caused by such concentrations. *CLR Corp. v. Henline*, 702 F.2d at 639. The court finds the evidence that Ann Arbor has offered to be sufficient justification for this ordinance. The ordinance also appears to be

narrowly drawn to achieve its purpose. Adult materials remain freely available in the City, without offensive urban decay.

On the basis of these findings, the court finds that it is unlikely that the plaintiff will succeed on the merits of this action. Therefore, plaintiff's motion for a preliminary injunction against the enforcement of the Ann Arbor ordinance is denied.

SO ORDERED.