824 F.2d 489
 14 Media L. Rep. 1483
 Karen CHRISTY, individually and as sole shareholder of
Unique Creations, Inc., a Michigan corporation,
Plaintiff-Appellant,
v.
CITY OF ANN ARBOR, a municipal corporation; Edward Pierce,
individually and as Mayor of the City of Ann Arbor; and
William Corbett, individually and as Chief of Police of the
City of Ann Arbor, Defendants-Appellees.
 No. 86-1172.
 United States Court of Appeals,
Sixth Circuit.
 Submitted March 23, 1987.
Decided July 23, 1987.
 
 Anita McIntyre, Grosse Pointe, Mich., and Franklin Richard Brussow, Brussow and Krause, P.C., Lansing, Mich., for plaintiff-appellant.
 Karen Christy, pro se.
 R. Bruce Laidlaw, City Atty., Ann Arbor, Mich., for defendants-appellees.
 Before JONES and BROWN, Circuit Judges, and RUBIN, Chief District Judge.*
 NATHANIEL R. JONES, Circuit Judge.
 
 
 1
 Plaintiff, Karen Christy, appeals the district court's order denying her motion for a preliminary injunction. Her motion sought to enjoin temporarily the enforcement of Ann Arbor's adult business zoning regulations on the ground that they unconstitutionally restrict the operation of adult bookstores. Because the district court's decision was premised upon erroneous legal standards and because essential findings lack any support in the record, we vacate the district court's order and remand.
 
 
 2
 The facts of this case are set forth in the district court's opinion, Christy v. City of Ann Arbor, 625 F.Supp. 960 (E.D.Mich.1986). In brief, they are as follows. Plaintiff Christy wishes to operate in Ann Arbor an adult bookstore featuring materials which are sexually explicit but nonobscene in nature. The location where she intends to operate this bookstore is not in an area zoned for "adult entertainment businesses."
 
 
 3
 Ann Arbor's zoning code addresses "adult entertainment businesses" at section 5.50. An "adult bookstore" is there defined as:
 
 
 4
 An establishment having as a principal activity the sale of books, magazines, newspapers, video tapes, video discs and motion picture films which are characterized by their emphasis on portrayals of human genitals and pubic regions or acts of human masturbation, sexual intercourse or sodomy.
 
 
 5
 A "principal activity" is "[a] use accounting for more than 20 per cent of a business' stock in trade, display space, floor space or movie display time per month." The zoning code then states that such businesses,
 
 
 6
 may be located in the City only in accordance with the following restrictions:
 
 
 7
 (a) No such business shall be located within 700 feet of a district which, pursuant to this Chapter, has been classified R1A, R1B, R1C, R2A, R2B, R3, R4A, R4B, R4C, R4C/D or R6.
 
 
 8
 (b) Such businesses shall only be located in a district classified pursuant to this Chapter as C2A.
 
 
 9
 (c) No such business shall be established within 700 feet of another adult entertainment business.
 
 
 10
 Christy engaged the services of Dr. Edwin Thomas, Professor of Geography at the University of Illinois--Chicago, to survey Ann Arbor to determine the availability of sites complying with the requirements of section 5.50. The results of Dr. Thomas' survey are summarized as follows:
 
 
 11
 (1) Ann Arbor contains approximately 25.23 square miles;
 
 
 12
 (2) That area of Ann Arbor where an adult entertainment business may lawfully locate under Section 5.50(2) totals 0.058 square miles;
 
 
 13
 (3) The percentage of land area in Ann Arbor where an adult entertainment business may lawfully locate is approximately 0.23 (23/100) of 1%.
 
 
 14
 Christy filed suit in federal district court, asking that the Ann Arbor zoning ordinance be declared unconstitutionally restrictive and seeking an injunction against the ordinance's enforcement. Christy subsequently made a motion to preliminarily enjoin defendant's enforcement of the ordinance pending a final disposition in the case. Plaintiff appeals the denial of that motion under 28 U.S.C. Sec. 1292(a)(1) (1982).
 
 
 15
 This court may review a district court's grant or denial of a preliminary injunction only to determine whether the district court abused its discretion. American Motors Sales Corp. v. Runke, 708 F.2d 202, 205 (6th Cir.1983). "A district court abuses its discretion when it relies on clearly erroneous findings of fact, or when it improperly applies the law or uses an erroneous legal standard." Christian Schmidt Brewing Co. v. G. Heilman Brewing Co., 753 F.2d 1354, 1356 (6th Cir.1985) (citations omitted). See also C. Wright & A. Miller, Federal Practice and Procedure Sec. 2962 (1973). The court below based its denial of Christy's motion on her failure to fulfill the first requirement for a preliminary injunction--a demonstration of a likelihood of success on the merits. Whether the district court correctly decided that plaintiff was unlikely to succeed on the merits depends upon its correct application of Young v. American Mini Threatres, 427 U.S. 50, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976), and its progeny.
 
 
 16
 In American Mini Theatres, the Supreme Court upheld a Detroit zoning ordinance that prohibited the location of adult theatres and bookstores within 500 feet of a residential area and within 1,000 feet of two other "regulated uses."[1] The Court held that this regulation was permissible because the interference with first amendment rights was "slight" in light of the myriad locations in Detroit still available for adult stores, id. at 71 n. 35, 96 S.Ct. at 2453 n. 35, and because the ordinance was shown to have the legitimate purpose of preventing urban blight. Id. at 71 n. 34, 96 S.Ct. at 2453 n. 34. The Court noted that the "situation would be quite different if the ordinance had the effect of suppressing, or greatly restricting access to, lawful speech." Id. at 71 n. 35, 96 S.Ct. at 2453 n. 35. The Court employed similar reasoning in City of Renton v. Playtime Theatres, Inc., 475 U.S. 41, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986). It stated that the "appropriate inquiry" is whether a zoning ordinance "is designed to serve a substantial government interest and allows for reasonable alternative avenues of communication." Id. at 930. The Rent on ordinance was upheld because the evidence demonstrated that the city had reviewed relevant studies of other cities before enacting its own "skid row" ordinance and because the city had left open 5 percent (520 acres) of its land for the use of adult businesses.
 
 
 17
 Although both the Supreme Court's decisions on this issue have held the zoning ordinances to be constitutional, the Sixth Circuit has made it clear that each case must be decided according to its specific facts. In Keego Harbor Co. v. City of Keego Harbor, 657 F.2d 94 (6th Cir.1981), this court held unconstitutional an ordinance that prohibited the placement of adult theatres within 500 feet of a bar, a church, or a school, or within 250 feet of a residential zone. The court based its holding on the lack of factual support for the city's alleged purpose of preventing "blight" and on the ordinance's effect of totally banning adult theatres. Id. at 98. In CLR Corp. v. Henline, 702 F.2d 637 (6th Cir.1983), this court again declared a zoning ordinance to be unconstitutional. The ordinance in Henline was very similar to the ordinance now in question: it limited adult businesses to the "B-2" business district and required that they be 500 feet from any church, school, or residence, and 1,000 feet from any other restricted use. The court first pointed out that the ordinance severely restricted first amendment expression because its impact was to permit only two to four restricted uses in a half-mile strip of the 25 square mile city. Second, there was "no evidence in City Council meetings or elsewhere that the ordinance was enacted for the purpose of preventing urban blight through deconcentrating restricted uses." Id. at 639 (emphasis in original). Although the city need not have conducted its own research on the effect of adult businesses on the city's urban areas, id., the court insisted on some proof that the city was actually attempting to address the problem of urban blight.
 
 
 18
 In the case before us, the district court applied the two-part analysis required by this line of cases. It examined both the restrictiveness of the zoning ordinance and the city's justification for imposing restrictions. However, the district court made several crucial errors in the course of its examination.
 
 
 19
 First, the district court principally relied upon the zoning ordinance's applicability only to businesses with more than 20 percent adult wares in order to hold that the ordinance was "not greatly restrictive of first amendment rights." 625 F.Supp. at 966.
 
 
 20
 Ann Arbor's unique provisions that allow businesses to have up to 20% of their stock in trade, etc., in adult materials, without imposing any zoning regulation, gives [sic] the public easy access to these materials.
 
 
 21
 * * *
 
 
 22
 * * *
 
 
 23
 By allowing stores to carry up to 20% adult wares, the ordinance guarantees the right of merchants to sell these materials.
 
 
 24
 Id. The district court's reasoning seems to be that a city can set an arbitrary limit on the amount of adult materials sold in bookstores, and such a limitation is not greatly restrictive of first amendment rights as long as some adult materials are still available. However, a city cannot arbitrarily limit the exercise of first amendment rights. Nonobscene, erotic materials are a form of protected expression under the first amendment. American Mini Theatres, 427 U.S. at 73 n. 1, 96 S.Ct. at 2453 n. 1 (Powell, J., concurring); Avalon Cinema Corp. v. Thompson, 667 F.2d 659, 663 n. 10 (8th Cir.1981) (en banc); Buchanan, Toward a Unified Theory of Governmental Power to Regulate Protected Speech, 18 Conn.L.Rev. 531 (1986). It is clearly quite restrictive to permit a business to engage in that protected expression only 20 percent of the time. To demonstrate the fallaciousness of the district court's reasoning, imagine an ordinance allowing book stores to sell nonfiction only if they limit nonfiction to 20 percent of their business. No one could argue that such an ordinance would not limit the sale of histories, biographies, newspapers and magazines.
 
 
 25
 A limitation of adult materials to 20 percent of a bookseller's wares conditions the constitutional right to speak in one way on the bookseller's willingness to speak in a different way 80 percent of the time. This is a severe restriction of first amendment rights. The Supreme Court has not permitted the states to condition even the right to drive a car on a person's willingness to express certain ideas, Wooley v. Maynard 430 U.S. 705, 715, 97 S.Ct. 1428, 1435, 51 L.Ed.2d 752 (1977); certainly the right to engage in one constitutionally protected form of expression cannot be conditioned on participation in other, government-approved, forms of expression. See The Supreme Court--Leading Cases, 100 Harv.L.Rev. 100, 182-90 (1986). We therefore reject the district court's conclusion that the distribution of adult books is not restricted by an ordinance which purports to regulate only strictly adult bookstores.[2]
 
 
 26
 Although the district court primarily relied upon the 20 percent exception to hold that the zoning ordinance was only incidentally restrictive, it also mentioned the city's "assertion" that numerous locations remained available for strictly adult bookstores. The court therefore distinguished this case from Schad v. Mount Ephraim, 452 U.S. 61, 101 S.Ct. 2176, 68 L.Ed.2d 671 (1981), where an absolute ban on adult businesses was struck down. However, in CLR v. Henline, 702 F.2d at 639, this circuit held that an ordinance can be severely restrictive, and so subject to the analysis in Schad, even if it does not totally ban adult businesses. We therefore remand to the district court the question whether Ann Arbor's zoning ordinance severely restricts first amendment expression according to this court's analysis in CLR v. Henline.
 
 
 27
 Next we turn to the district court's findings on the issue of whether Ann Arbor's Zoning Ordinance was designed to serve a substantial government interest. Although both the Supreme Court in Renton, 106 S.Ct. at 931, and the Sixth Circuit in CLR v. Henline, 702 F.2d at 639, have stated that a city need not conduct new independent studies to justify adult business zoning ordinances, both courts have required some relevant evidence to demonstrate that the zoning ordinance was intended to address the secondary effects of adult businesses. The burden of proof is on the city to show that more than a rational relationship exists between the ordinance and this government interest. Keego Harbor, 657 F.2d at 97 n. 3. In the case at hand, the district court's opinion notes only that the city "has asserted that its purpose in passing this ordinance is to prevent the concentration of adult businesses and resultant urban blight." 625 F.Supp. at 967. Upon careful review of the record in this case, we find no such "assertion," nor do we find any evidence of a legitimate government objective for the passage of this zoning ordinance. In the absence of any such evidence in the record, we conclude that the district court abused its discretion in finding that "the evidence that Ann Arbor has offered [is] sufficient justification for this ordinance." Id.
 
 
 28
 In light of the errors which led to the district court's holding that plaintiff was unlikely to succeed on the merits, we VACATE the district court's order denying the preliminary injunction and REMAND this case for further proceedings consistent with this opinion.
 
 
 29
 BAILEY BROWN, Senior Circuit Judge, concurring in part and dissenting in part.
 
 
 30
 While it is true that a zoning regulation can be severely restrictive, and thus subject to the more laborious requirements in Schad v. Borough of Mount Ephriam, 452 U.S. 61, 101 S.Ct. 2176, 68 L.Ed.2d 671 (1981), even if it does not totally ban adult businesses, see CLR Corp. v. Henline, 702 F.2d 637, 639 (6th Cir.1983), I do not believe that Ann Arbor's ordinance stringently limits first amendment free expression.
 
 
 31
 As the majority correctly notes, a case raising issues of a zoning ordinance's constitutionality must be decided according to its specific facts. In the present dispute, the ordinance at issue applies to only those businesses which have more than twenty percent (20%) of their stock in trade in adult materials. Thus, through scores of other businesses, all throughout Ann Arbor, whose stock in trade in adult materials may amount to 20% or less of their total stock, the public can have easy access to such materials. In so stating, I assume that if the demand is there, the businesses will accordingly respond.
 
 
 32
 Further, although adult businesses can operate in only a small percentage of the Ann Arbor area, their existence under the ordinance is simply not harshly restrained. The districts where the adult businesses may locate under the ordinance are in the heart of Ann Arbor within the city's central business zone--hardly a remote area. The districts seem to be commercially viable locations for adult enterprises and the plaintiff has not shown otherwise. The Ann Arbor ordinance merely regulates the location of such enterprises; it does not, for all practical purposes, eliminate them.
 
 
 33
 For the foregoing reasons, I therefore dissent from that portion of the majority opinion which remands for a determination in light of CLR Corp. v. Henline whether the ordinance poses a severe restriction.
 
 
 34
 However, I agree with the majority's conclusion that the district court abused its discretion in denying the plaintiff's motion for a preliminary injunction, since there is no evidence in the record which demonstrates Ann Arbor's alleged purpose in enacting the ordinance to avoid urban blight. Upon remand, Ann Arbor may present proof of its alleged goal to justify what I view, under the present facts, as a slight infringement of first amendment freedom. In addition, the court may, at that time, determine whether the entitlement to injunctive relief may be denied for reasons other than the likelihood of success on the merits. See Pascoe v. IRS, 580 F.Supp. 649, 651 (E.D.Mich.),aff'd mem., 755 F.2d 932 (6th Cir.1985) (enumerates requirements for successful motion for preliminary injunction).
 
 
 
 *
 Honorable Carl B. Rubin, United States District Court for the Southern District of Ohio, sitting by designation
 
 
 [1]
 An adult bookstore was defined as:
 An establishment having as a substantial or significant portion of its stock in trade, books, magazines, and other periodicals which are distinguished or characterized by their emphasis on matter depicting, describing or relating to "Specified Sexual Activities" or "Special Anotomical Areas," (as defined below), or an establishment with a segment or section devoted to the sale or display of such material.
 Id. at 53 n. 5, 96 S.Ct. at 2444 n. 5.
 
 
 [2]
 Moreover, contrary to the dissent's assertion, no evidence in the record indicates that "scores of other businesses, all throughout Ann Arbor," now include, or in the future will include, adult materials as 20 percent or less of their total stock