**MORSCOTT, INC., Plaintiff,**

v.

**CITY OF CLEVELAND,
et al., Defendants.**

**No. 1:90CV0027.**

United States District Court,
N.D. Ohio, E.D.

May 23, 1990.

See also 936 F.2d 271.

J. Michael Murray, Steven D. Shafron, Berkman, Gordon, Murray and Palda, Cleveland, Ohio, court-appointed, for plaintiff.

1. Defendants Francis Cash and Paul Beno were sued in their official capacities only. Mir Laik Ali, the present Zoning Administrator for the City of Cleveland, was later substituted as a defendant in place of Paul Beno pursuant to Fed.R.Civ.P. 25(d).

2. Along with its complaint, Morscott filed a "Motion for a Preliminary Injunction and Request for an Evidentiary Hearing."

3. These four sections of the zoning code regulate the location of "adult uses" in the City of Cleveland. Specifically, section 343.01 regulates adult bookstores within "Local Retail Business Districts" (all other adult uses prohibited) through spacing restrictions; section 343.11 regulates adult bookstores, adult motion picture theatres, adult mini-motion picture theatres, and adult entertainment cabarets, also through spacing restrictions, within "General Retail Business Districts"; section 343.22 (not referred to in plaintiff's motion, but addressed at the preliminary injunction hearing) prohibits all adult uses within "Limited Retail Districts"; and, section 345.06 prohibits all adult uses within any "Industrial District." Zoning Code §§ 343.01, 343.11, 343.22, and 345.06.

The spacing restrictions of sections 343.01 and 343.11 require adult bookstores and adult entertainment uses, respectively, to be one thousand feet (1000') away from any other adult use permitted in the zoning district and one thou-

Judith M. Francetic, Paul A. Janis, Asst. Director of Law, Cleveland, Ohio, court-appointed, for defendants.

## MEMORANDUM OF OPINION

MANOS, District Judge.

On January 5, 1990, Morscott, Inc. ("Morscott"), plaintiff, which seeks to open and operate an adult bookstore and mini-motion picture theatre on property located at 13330 Brookpark Road in Cleveland, Ohio, filed the above-captioned case against the City of Cleveland, its Commissioner of Building Francis Cash, and its Zoning Administrator Paul Beno (hereinafter collectively referred to as "the City"),[1] defendants, seeking declaratory and injunctive relief[2] against the City's enforcement of Cleveland, Ohio, Zoning Code §§ 343.01, 343.11, 343.22, and 345.06 (1988) [hereinafter Zoning Code]. Morscott alleges that the above provisions of the City's zoning code, taken collectively,[3] violate its constitutional right to freedom of speech under the first and fourteenth amendments to the U.S. Constitution[4] and art. I, § 10 of the

sand feet (1000') away from any church, hospital, school, library, playground, any institutional use, or residential district. The one thousand-foot (1000') distance requirement regarding proximity to residential districts can be waived if the person seeking to open an adult use obtains on a petition the signatures of fifty-one percent (51%) of all persons living or doing business within one thousand feet (1000') of the proposed adult use. Zoning Code §§ 343.01 and 343.11.

4. The first and fourteenth amendment claims are brought under 42 U.S.C.A. § 1983 (West 1981), which provides in pertinent part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or any other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

*Id.*

The first and fourteenth amendments provide in pertinent part: "Congress shall make no law ... abridging the freedom of speech," U.S. Const. amend. I, and "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United

Ohio Constitution.[5] Jurisdiction is proper under 28 U.S.C.A. §§ 1331 (West Supp. 1990), 1343(a)(3) and (4) (West Supp.1990), and 2201 (West Supp.1990).

On March 30, 1990, the court held an evidentiary hearing on Morscott's motion for preliminary injunction. For the following reasons, the motion is granted.

## I.

On November 16, 1989, Morscott, the owner of a parcel of land located at 13330 Brookpark Road in Cleveland, Ohio, on which there is a one-story building,[6] applied to the City of Cleveland's Department of Community Development, Division of Building & Housing, for a permit to change the use of its building from a "money exchange" to an "adult bookstore and mini-motion picture theatre." On November 17, 1989, the application was denied pursuant to Zoning Code § 345.06. That section provides:

> In any Industrial District,[7] no building or premises shall hereafter be erected, altered, used, arranged or designed to be used, in whole or in part for any form of adult entertainment as defined in Section 343.11(a)(2). (Ord. No. 2275–84. Passed December 2, 1985. Effective December 6, 1985).

Zoning Code § 345.06.[8]

Shortly thereafter, Morscott filed its motion for preliminary and permanent injunctive relief.

## II.

It is well-settled in the Sixth Circuit that district courts evaluating requests for pre-liminary injunctive relief must consider four interrelated factors:

1) Whether the plaintiffs have shown a strong or substantial likelihood or probability of success on the merits;

2) Whether the plaintiffs have shown irreparable injury [for which there is no adequate remedy at law];

3) Whether the issuance of a preliminary injunction would cause substantial harm to others;

4) Whether the public interest would be served by issuing a preliminary injunction.

*N.A.A.C.P. v. City of Mansfield,* 866 F.2d 162, 166 (6th Cir.1989) (quoting *Mason County Medical Ass'n v. Knebel,* 563 F.2d 256, 261 (6th Cir.1977)) (insert added). Each will be considered in turn; however, before the court can do so it must determine the nature of Cleveland's zoning code as it relates to adult entertainment uses, *i.e.,* whether the code's adult use provisions restrict or prohibit speech on the basis of its content, a *per se* first amendment violation, *see Renton v. Playtime Theatres, Inc.,* 475 U.S. 41, 46–47, 106 S.Ct. 925, 928, 89 L.Ed.2d 29 (1986); *Young v. American Mini Theatres,* 427 U.S. 50, 64–65, 96 S.Ct. 2440, 2449, 49 L.Ed.2d 310 (1976), or whether it merely places content-neutral "time, place, and manner" restrictions on the exercise of free speech. *Young,* 427 U.S. at 63 & n. 18, 96 S.Ct. at 2449 & n. 18 ("Reasonable regulations of the time, place, and manner of protected

States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

**5.** Although Morscott's motion alleges a violation of Ohio Const. art. I, § 10 (which parallels the federal constitution's fifth and sixth amendment due process rights for persons accused of criminal acts), it probably intended to allege a violation of Ohio Const. art. I, § 11, which provides in pertinent part: "[N]o law shall be passed to restrain or abridge the liberty of speech, or of the press...." *Id.*

**6.** This parcel of land, and the building situated upon it, are located in an area zoned for "General Industry." *See* Plaintiff's Hearing Exhibit 13 (Building Zone Maps of the City of Cleveland, Section 331.01 of the Codified Ordinances of the City of Cleveland (Corrected to September 15, 1989) [hereinafter Building Zone Maps] ).

**7.** *See supra* note 6.

**8.** Out of Cleveland's total land area of 48,384 acres, 14,587 acres (30% of its total land area) are zoned as "Industrial Districts." City Planning Commission, Cleveland, Ohio, Cleveland Fact Book (1981) (also Plaintiff's Hearing Exhibit 15 [hereinafter Cleveland Fact Book] ).

speech,[9] where those regulations are necessary to further significant governmental interests, are permitted by the First Amendment") (footnote added).

Cleveland's zoning code does not prohibit adult bookstores and/or other forms of adult entertainment within the city, it merely regulates the location of such uses; further, its provisions relating to adult uses are not directed toward the message conveyed by adult entertainment, but instead toward its "secondary effects," and the impact such uses have on the surrounding area.[10] Following the Supreme Court's reasoning in *Young* and its progeny, the proper analysis to apply in this case is that accorded to content-neutral "time, place, and manner" regulation. *Young*, 427 U.S. at 63 & n. 18, 96 S.Ct. at 2449 & n. 18; *Renton*, 475 U.S. at 49, 106 S.Ct. at 929–30 ("[In *Young*], a majority of this Court decided that, at least with respect to businesses that purvey sexually explicit materials, zoning ordinances designed to combat the undesirable secondary effects of such businesses are to be reviewed under the standards applicable to 'content-neutral' time, place, and manner regulations") (footnote omitted).

 Content-neutral time, place, and manner regulations on the exercise of free speech are acceptable under the first amendment so long as they are designed to serve a substantial governmental interest and do not unreasonably limit alternative avenues of communication. *Renton*, 475 U.S. at 47, 106 S.Ct. at 928. To meet this standard, the city must show: (1) that it

relied on sufficiently objective factual information justifying its restrictions on free speech, (2) that its regulations are adequately designed to further its stated justification, and, (3) that its regulations do not have the effect of suppressing, or greatly restricting access to, lawful speech. *Renton*, 475 U.S. at 50–54, 106 S.Ct. at 930–32; *Young*, 427 U.S. at 71 & n. 35, 96 S.Ct. at 2452–53 & n. 35; *Keego Harbor Co. v. City of Keego Harbor*, 657 F.2d 94, 98 (6th Cir. 1981).

Having determined the appropriate analysis to apply, and the standards which must be met in order for the zoning provisions to be found constitutionally valid under this analysis, the court can now determine whether Morscott is entitled to preliminary injunctive relief under the Sixth Circuit's four factor test.

### A.

 Morscott has shown a very strong likelihood of success on the merits.

### 1.

First, the section of Cleveland's zoning code which directly prevents[11] Morscott from opening and operating its adult bookstore and mini-motion picture theatre, the provision which bans adult uses in any industrial district,[12] was enacted by the City without any objective factual information before it. At the March 30 hearing, the only evidence presented by the city on its "objective factual basis" for enacting section 345.06 was the following letter,

---

**9.** The City concedes that the speech at issue in this case is protected non-obscene speech under the first amendment. *Schad v. Borough of Mount Ephraim*, 452 U.S. 61, 65–66, 101 S.Ct. 2176, 2181, 68 L.Ed.2d 671 (1981); *Christy v. City of Ann Arbor*, 824 F.2d 489, 492 (6th Cir. 1987), *cert. denied*, 484 U.S. 1059, 108 S.Ct. 1013, 98 L.Ed.2d 978 (1988); *cf. Miller v. California*, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973) and its progeny (describing what *is* unprotected, obscene speech).

**10.** The purpose behind Cleveland's adult use provisions requiring a certain distance between such uses, *see supra* note 3, is based on the City Council's belief that "concentration of 'Adult' movie theatres and adult 'Book' Stores ... in various areas throughout the City of Cleveland

has certain adverse effects in the neighborhoods in which such businesses are situated which tend to contribute to the blighting and downgrading of surrounding neighborhoods, [and] ... caus[e] said surrounding neighborhoods to give the appearance of decline, both economically and residentially...." Cleveland, Ohio, Ordinance 431–75 (April 25, 1979) (preamble to the first of Cleveland's "adult use" ordinances).

**11.** Morscott also has standing to assert the unconstitutionality of those provisions of the zoning code which do not affect it directly, *see Schad*, 452 U.S. at 66, 101 S.Ct. at 2181; *Young*, 427 U.S. at 59–60, 96 S.Ct. at 2447.

**12.** Zoning Code § 345.06.

sent to the City Planning Commission by Councilman Dale Miller, the sponsor of the legislation:

The purpose of this ordinance is to tighten restrictions on adult entertainment without complete prohibition. The major aim is to prevent the development or growth of visible strips of adult entertainment, especially in or near residential areas....

. . . .

3) The legislation prohibits adult entertainment in any industrial district, on the theory that such uses are incompatable with sound economic development. Increasingly, economic development is encouraged by attractive conditions and safe surroundings. This legislation runs contrary to the theory that each zoning classification is progressively more permissive. Rather, the theory is that incompatable uses should not be in the same area. The current prohibition on residential development in some industrial districts is consistent with the concept of this legislation.

. . . .

I believe this legislation will reduce the negative impact of adult entertainment in Cleveland within constitutional guidelines without creating insuperable enforcement difficulties, and I would ask for your support.

Letter from Councilman Dale Miller to Cleveland City Planning Commission (Dec. 5, 1984).

Although a city is entitled to rely on the experiences of other cities as a basis for justifying its zoning laws, *Renton*, 475 U.S. at 51, 106 S.Ct. at 931, there has been no evidence presented to this court that the "theories" espoused by Miller in the above letter, and later "relied upon" by the City in enacting the legislation, are anything but his own; as such, the theory's factual basis and objectivity are suspect. *See Keego Harbor*, 657 F.2d at 98 ("When a city effectively zones protected activity out of the political entity,[13] the justification required is more substantial than when the First Amendment burden is merely 'incidental' ...") (footnote added).

2.

Second, the effect of Cleveland's adult use zoning regulations is totally contrary to the City's stated purpose for enacting them. Although the City claims that the adult use regulations were enacted to deconcentrate, or disperse, such uses in an effort to prevent neighborhood blighting, *see supra* note 10, the effect of the regulations is to concentrate them along a one-and-one-half mile (1½ mi.) strip of Brookpark Road (with over a mile of the area in the center of the strip unavailable due to the ban on adult uses in industrial zones). *See* text *infra* Part I–A–3 (evidence presented at the hearing on the location of sites available for adult uses); *see also* Plaintiff's Hearing Exhibit 13 (Building Zone Maps); *CLR Corp. v. Henline*, 702 F.2d 637, 639 (6th Cir.1983) ("[A]ssuming [the city's] purpose was to deconcentrate restricted uses, the *effect* of the ordinance is to *concentrate* any adult bookstores and theatres in the city into a 2,500–foot frontage[;] we decline to find a compelling governmental interest to justify this statute when [the city] cannot demonstrate even a rational relationship between the asserted purpose and the effect of the statute") (emphasis in original).

Additionally, the City's "objective data" (Miller's letter) admits that the ban on adult uses in industrial districts runs contrary to Cleveland's overall scheme of increasingly permissive zoning regulations as one progresses from residential to industrial districts; it is difficult to comprehend why Cleveland would allow adult uses in local retail and general retail business districts, where residential development is allowed, *see generally* Zoning Code chapter 343, yet ban them in industrial districts where, as Miller's letter admits, a harmful effect on neighborhoods is much less likely because of the prohibition on residential development there. *See* Cleveland Fact

---

**13.** *See* text *infra* Part I–A–3 (testimony of Dennis Hadick on the number of sites available in

Cleveland for opening adult uses).

Book (only 111.5 acres out of the 14,587.1 acres zoned for industry, or 0.76%, allow for residential development); *see also* Zoning Code chapter 345 ("Industrial Districts").

3.

Third, the zoning code's adult use provisions do not allow the owner of an adult bookstore or adult theatre a reasonable opportunity to open and operate its business within the City of Cleveland. *See Renton*, 475 U.S. at 54, 106 S.Ct. at 932 ("In our view, the First Amendment requires ... that [the city] refrain from effectively denying [the owners of adult theatres] a reasonable opportunity to open and operate an adult theatre within the city").

At the March 30 hearing, Morscott presented the unrebutted[14] testimony of Dennis Hadick, the contractor applying for the building permit, who demonstrated, by reference to Cleveland's official zoning maps,[15] that *only three lots in the entire city,* all located within a mile-and-a-half of one another on Brookpark Road (currently occupied by an RTA parking lot, Brookpark News & Books (an adult bookstore), and a Ramada Inn), satisfy the location and distance requirements under the present zoning scheme.[16] To put this in perspective, only 3.6 acres out of the City's total land area of 48,384 acres (equivalent to 0.007%) are available as sites for adult uses. Plaintiff's Hearing Exhibit 16.[17] Such a zoning plan clearly runs afoul of the Supreme Court's directive in *Renton* that owners of adult bookstores and theatres cannot be denied a reasonable opportunity to open and operate their businesses.

The City attempted to counter Hadick's testimony by reference to the code's "grandfather clause," which allows "prior nonconforming uses" to remain at their present sites so long as they are neither enlarged nor expanded, and to its waiver provision, *see supra* note 3; however, the City presented no evidence on the number of prior nonconforming uses now operating under the grandfather clause, or on the feasibility of obtaining such a waiver. *See* Zoning Code chapter 359 ("Nonconforming Uses"). Further, the court finds suspect a scheme of zoning regulations which condition the exercise of free speech on the approval of others located nearby or on limited[18] exceptions to the rule.

**14.** The only evidence presented by the City consisted of copies of the ordinances at issue and the record of the City Council's minutes written when the ordinances were either enacted or amended.

**15.** *See supra* note 6 (referring to Building Zone Maps, which are on file at City Hall).

**16.** The fact that these three "available" sites are currently occupied by other businesses is not relevant to determining how many sites the zoning code leaves open for adult uses. *See Renton*, 475 U.S. at 54, 106 S.Ct. at 932, wherein the Supreme Court held that the City of Renton, Washington met its burden of showing that the city made available an adequate number of sites for adult uses notwithstanding the fact that most of the land left open was either undeveloped or not "commercially viable" at the time of suit: "That [adult theatre owners] must fend for themselves in the real estate market, on an equal footing with other prospective purchasers and lessees, does not give rise to a First Amendment violation." *Id.*

**17.** Actually, due to the spacing restrictions set out in the zoning code, *see supra* note 3, only two of these lots can satisfy the zoning code at any one time because the RTA lot and Brookpark News & Books are adjacent to one another.

**18.** It is not clear whether sale of an adult use to a subsequent purchaser would cause the land to lose its status as a permitted prior nonconforming use. *See* Zoning Code § 359.02, which sets out the methods by which nonconforming use status is lost:

(a) A nonconforming use of a building or premises which has been abandoned shall not thereafter be returned to such nonconforming use.

(b) A nonconforming use shall be considered abandoned:

(1) *When the intent of the owner to discontinue the use is apparent;*

(2) When the characteristic equipment and the furnishings of the nonconforming use have been removed from the premises and have not been replaced by similar equipment within two years, unless other facts show intention to resume the nonconforming use;

(3) When it has been replaced by a conforming use;

(4) When it has been changed to another use under permit from the Board of Zoning Appeals. (Ord. 2204–A–48. Passed December 19, 1949. Effective January 29, 1950.).

*Id.* (emphasis added).

Unless the City can show at trial that Morscott's evidence mischaracterizes the availability of sites allowing adult uses, or that the zoning regulation's apparent effect of concentrating those sites, contrary to its stated purpose to disperse them, is imaginary, Cleveland's present adult use zoning provisions are unconstitutional under the first amendment.

Accordingly, Morscott has shown that it is very likely to succeed on the merits at trial.

### B.

Morscott has shown that it will suffer irreparable injury if a preliminary injunction does not issue.

The testimony and evidence presented by Morscott at the March 30 hearing leads this court to believe that it is being denied free speech rights guaranteed by the first amendment; accordingly, it has shown irreparable injury. As the Supreme Court held in *Elrod v. Burns,* 427 U.S. 347, 373–74, 96 S.Ct. 2673, 2690, 49 L.Ed.2d 547 (1976):

> The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury. See *New York Times Co. v. United States,* 403 U.S. 713, 91 S. Ct. 2140, 29 L.Ed.2d 822 (1971). Since such injury was both threatened and occurring at the time of respondents' motion and since respondents sufficiently demonstrated a probability of success on the merits, the Court of Appeals might properly have held that the District Court abused its discretion in denying preliminary injunctive relief.

*Id.* (citing *Bantam Books, Inc. v. Sullivan,* 372 U.S. 58, 67, 83 S.Ct. 631, 637, 9 L.Ed.2d 584 (1963)); *accord Christy v. City of Ann Arbor,* 824 F.2d 489 (6th Cir.1987), *cert. denied,* 484 U.S. 1059, 108 S.Ct. 1013, 98 L.Ed.2d 978 (1988).

### C.

Morscott has shown that issuance of a preliminary injunction will cause others little, if any, harm.

The property on which Morscott seeks to open its adult bookstore and mini-motion picture theatre is located in an area zoned for "General Industry." *See supra* note 6. There are no residential areas, churches, hospitals, schools, libraries, playgrounds, or any other institutional use within a thousand feet (1000′) of it. Therefore, granting plaintiff preliminary injunctive relief against the enforcement of the zoning code's adult use provisions, at least to the degree that its ban on adult uses in industrial zones prevents Morscott from opening and operating its business pending final resolution of this case, will not cause significant harm to others.

### D.

Morscott has shown that the public interest would be served by granting preliminary injunctive relief.

It is beyond cavil that it is in the public interest to uphold a constitutionally protected right. *Playboy Enterprises, Inc. v. Meese,* 639 F.Supp. 581, 587 (D.D.C.1986).

### III.

Because Morscott has satisfied all four requirements prerequisite to the granting of a preliminary injunction, its motion is granted.

Accordingly, the City shall issue to plaintiff all necessary permits to allow it to remodel its building so that it can be opened and operated as an adult bookstore and mini-motion picture theatre pending final resolution of this case.

IT IS SO ORDERED.