**Mark E. WOLFE, Plaintiff,**

v.

**The VILLAGE OF BRICE, OHIO, Defendant.**

No. 95CV00894.

United States District Court, S.D. Ohio, Eastern Division.

March 17, 1998.

Eric P. Rotondo, Columbus, OH, for Plaintiff.

David W. Telford Carroll, Columbus, OH, for Defendant.

## OPINION AND ORDER

MARBLEY, District Judge.

### I. INTRODUCTION

This matter comes before the Court on the parties' opposing Motions for Summary Judgment. Plaintiff, Mark E. Wolfe ("Wolfe"), brings this action against Defendant, the Village of Brice, Ohio ("the Village"), challenging the constitutionality of a 1994 Village Ordinance which regulated the location and operation of adults-only bookstores. Plaintiff seeks a declaratory judgment, injunctive relief, and damages as well as attorneys' fees. This Court's jurisdiction is pursuant to 28 U.S.C. § 1331.

### II. FACTUAL BACKGROUND

Wolfe is the owner of property located at 2895 Brice Road, within the Village of Brice, Ohio. The property consists of improved real estate upon which a commercial building is located. Prior to Wolfe's ownership of the property,[1] the building housed the only adult bookstore within the Village. The use of the property for this purpose was permitted under the Village's zoning ordinances in effect at that time. However, in 1991, the continued use of the property for any purpose was enjoined for one year by the Franklin County Court of Common Pleas on the basis that the use of the property as an adult bookstore was a nuisance. The adult bookstore did not reopen after the one year injunction expired.

In 1994, the Village enacted Ordinance 7–94, which, among other things, prohibited the operation of adult entertainment facilities, including adult bookstores, within 1000 feet of churches and schools and within 300 feet of any residential area.[2] Wolfe's property is located within 1000 feet of a church and school.

The preamble to the ordinance set forth justifications for the regulation; for example, the Village stated that it wished to avoid a deleterious effect on existing neighborhoods, excessive noise levels and similar secondary adverse effects attributed to the operation of an adults-only businesses. In January 1995, Wolfe rented space in his building to a tenant who either opened or intended to open an adult bookstore.[3] This business was effectively closed or thwarted when the tenant learned of the 1994 Ordinance. Wolfe then commenced the instant action in September 1995, challenging the constitutionality of Ordinance 7–94[4] and alleging a deprivation of his rights under 42 U.S.C. § 1983. The property has not been rented since 1995.

### III. LEGAL ANALYSIS

#### A. Standard For Summary Judgment

Fed.R.Civ.P. 56(c) provides in relevant part that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, togeth-

---

1. Prior to 1993, Wolfe's property was owned by his ex-wife.

2. Ordinance 7–94 § 3(a) provides: "No adult entertainment facility shall be established within three hundred (300) feet of any area zoned for residential use." *Id.*

 Ordinance 7–94 § 3(b) provides: "No adult entertainment facility shall be established within a radius of one thousand (1000) feet of any school, library, or teaching facility, whether public or private, governmental or commercial, which school, library, or teaching facility is attended by persons under eighteen (18) years of age." *Id.*

 Neither party explicitly places any other restrictive provision into discussion; however, a church is involved, which would also implicate Ordinance 7–94 § 3(e): "No adult entertainment facility shall be established within a radius of one thousand (1000) feet of any established church, synagogue, or permanently established place of religious services which is attended by persons under eighteen (18) years of age." *Id.*

3. Defendant contends that the bookstore never opened after the tenant was informed that the location was within the 1994 Ordinance's area of prohibited operation. Plaintiff, however, asserts that the bookstore did in fact open in January 1995, but closed down after being informed of the location violation. For purposes of the cross Motions, this dispute is immaterial.

4. In 1996, the Village passed Ordinance 2–96, changing the restriction on adult entertainment facilities from 1000 feet to within 750 feet of a church or school. Wolfe does not challenge the constitutionality of this new ordinance. However, it is undisputed that Wolfe's property lies within 750 feet of a church and school, and his 1995 tenants' proposed use is presently prohibited under the 1996 ordinance.

er with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." A fact is deemed material only if it "might affect the outcome of the lawsuit under the governing substantive law." *Wiley v. United States,* 20 F.3d 222, 224 (6th Cir.1994) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

The party moving for summary judgment has the burden of establishing that there are no genuine issues of material fact, which may be accomplished by demonstrating that the nonmoving party lacks evidence to support an essential element of its case. *See Barnhart v. Pickrel, Schaeffer & Ebeling Co., L.P.A.,* 12 F.3d 1382, 1389 (6th Cir.1993). The nonmoving party must then present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos., Inc.,* 8 F.3d 335, 339–40 (6th Cir.1993). The suggestion of a mere possibility of a factual dispute is insufficient to defeat a movant's motion for summary judgment. *See Mitchell v. Toledo Hospital,* 964 F.2d 577, 582 (6th Cir.1992) (citing *Gregg v. Allen–Bradley Co.,* 801 F.2d 859, 863 (6th Cir.1986)). Further, "summary judgment will not lie if the dispute is about a material fact that is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The necessary inquiry for this Court in determining whether summary judgment is appropriate is "whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Patton v. Bearden,* 8 F.3d 343, 346 (6th Cir.1993) (quoting *Anderson,* 477 U.S. at 251–52). In evaluating such a motion, the evidence must be viewed in the light most favorable to the nonmoving party. *See United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). The mere existence of a scintilla of evidence in support of the opposing party's position will be insufficient; there must be evidence on which the jury could reasonably find for the opposing party. *See Anderson,* 477 U.S. at 251; *Copeland v. Machulis,* 57 F.3d 476, 479 (6th Cir.1995).

In the instant matter, both Wolfe and the Village move for summary judgment.[5] For either side to obtain summary judgment, there can be no genuine issue of material fact. To determine which facts are material, this Court looks to that law applicable to the regulation of adults-only businesses.

### B. The Legality of the 1994 Ordinance

In *City of Renton, et al. v. Playtime Theatres, Inc., et al.,* 475 U.S. 41, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986), the Supreme Court outlined a multi-pronged test for determining whether a zoning ordinance regulating adults-only businesses violates the First and Fourteenth Amendment.[6] The Court held that " 'content-neutral' time, place, and manner regulations are acceptable so long as they are designed to serve a substantial governmental interest and do not unreasonably limit alternative avenues of communication."[7] *Id.* at 47. The zoning ordinance must be narrowly drawn, but a least-restrictive means analysis is not required. *See Schad v. Borough of Mount Ephraim,* 452 U.S. 61, 68, 101 S.Ct. 2176, 68

---

**5.** While both parties moved for summary judgment, Defendant failed to file a Reply Memorandum in Support of its Motion.

**6.** The *Renton* Court noted that an individual in such cases "can fare no better under the Equal Protection Clause than under the First amendment itself." *Id.* at 55 n. 4 (citing *Young v. American Mini Theatres, Inc.,* 427 U.S. 50, 63–73, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976)).

**7.** The Sixth Circuit Court of Appeals has noted that "[t]he Supreme Court has used two tests to analyze content-neutral regulations"—*Renton* and *United States v. O'Brien,* 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968)—and that the Supreme Court itself has stated that there is "little, if any, difference between the two" tests. *East Brooks Books, Inc. v. Memphis,* 48 F.3d 220, 226 & n. 5 (6th Cir.1995) (citing *Clark v. Community for Creative Non–Violence,* 468 U.S. 288, 104 S.Ct. 3065, 82 L.Ed.2d 221 (1984)); *see also Bamon Corp. v. Dayton,* 730 F.Supp. 80, 84 n. 5 (S.D.Ohio 1990) (recognizing similar nature of tests).

L.Ed.2d 671 (1981); *Bamon Corp. v. Dayton,* 730 F.Supp. 80, 84 n. 5, 89 (S.D.Ohio 1990).

■■■ Under *Renton,* the substantial governmental interest served cannot be aimed at the content of the material involved, but may address the secondary effects of such businesses. *See Renton,* 475 U.S. at 47. The Court identified acceptable governmental zoning interests: "to prevent crime, protect the city's retail trade, maintain property values, and generally 'protec[t] and preserv[e] the quality of [the city's] neighborhoods, commercial districts, and the quality of urban life ...'" *Id.* at 48. Further, in establishing its intent to address the secondary effects— an intent that must be made express—a city may rely upon studies and evidence "generated by other cities, so long as whatever evidence the city relies upon is reasonably believed to be relevant to the problem that the city addresses." *Id.* at 51–52; *see also CLR Corp. v. Henline,* 702 F.2d 637 (6th Cir.1983) (requiring factual justifications). Finally, it is not necessary that the sites in which a city permits location of adults-only businesses be economically viable; all that is required is that a city not foreclose residents from a reasonable opportunity to open such a facility in the city. *See Renton,* 475 U.S. at 53–54 ("In our view, the First Amendment requires ... that [the city] refrain from effectively denying [the owners of adult theaters] a reasonable opportunity to open and operate an adult theater within the city.")

## 1. Whether the 1994 Ordinance effected a complete ban on adult entertainment facilities within the Village of Brice

■■■ In his Motion for Summary Judgment, Wolfe argues that Ordinance 7–94 fails to meet the *Renton* test and is therefore unconstitutional as applied because all commercial locations in the Village were barred from operating as an adult bookstore when the ordinance was passed. Wolfe supports his contention that no alternative locations were permitted within the Village with his own affidavit.

In its Combined Memorandum in support of Defendant's Motion for Summary Judgment and Contra Plaintiff's Motion for Summary Judgment, Defendant argues that in January 1995, when Plaintiff sought to rent his property to an adult bookstore tenant "over 27% of Brice general commercial properties were outside a radius of 1000 feet from the church/school building." [8] Therefore, Defendant argues that the 1994 Brice Ordinance did not completely preclude the location of an adult bookstore in Brice.

Defendant supports his contention with affidavits of both the Mayor of Brice, David Welling, and a cartographer with the Office of the Franklin County Engineer, Bruce Jones. While the affidavits are inconsistent with each other with respect to which and how many specific Brice properties were outside the 1000 foot restriction imposed by the 1994 ordinance, they are consistent in their claim that at least some commercial properties in Brice were outside that restriction.

Thus, it initially appears that the parties have raised a genuine issue of fact which is material to the question of the constitutionality of the 1994 ordinance: whether the ordinance foreclosed the citizens from a reasonable opportunity to open an adult entertainment facility within the city. The evidence initially submitted by the parties raises a dispute as to how many locations were available for such facilities within the Village under Ordinance 7–94.

In its Combined Reply Memorandum in Support of Summary Judgment and Contra Defendants' Motion for Summary Judgement, however, Plaintiff argues that all of the commercial properties outside the 1000 foot restriction imposed by Ordinance 7–94 are unavailable as locations for adult entertainment facilities under a different provision of the 1994 ordinance. As noted above, Section 3(a) of the ordinance prohibits such facilities from being established within 300 feet of any area zoned for residential use. Plaintiff attaches an affidavit which supports his contention that all those properties identified by

8. The 27% figure was based on a measurement from the school and church buildings themselves. Defendant admits that "[i]f the measure-
ment were from the property line [instead of the building], 11% of the properties would be available for adult book store use."

Defendant as available within the Village under Section 3(b) of Ordinance 7–94 are excluded under Section 3(a) of that ordinance because of the existence of two nearby residential lots.

Defendant does not dispute Plaintiff's contention. At oral argument on the Motions, Defendant merely added that the two residential lots, which according to Plaintiff precluded the remaining locations within the Village from being available for an adult bookstore, were zoned for commercial use in 1996. While this fact may indeed serve to remediate any constitutional question with regard to the 1996 ordinance, it is wholly irrelevant to the instant action challenging the validity of the 1994 ordinance at the time that Plaintiff sought to open an adult bookstore. Thus, on the record before this Court, it is undisputed by Defendant that Sections 3(a) and 3(b) of Ordinance 7–94 together worked to foreclose Plaintiff entirely from a reasonable opportunity to open an adult entertainment facility within the Village in 1995.

### 2. Whether the total ban of such facilities is permissible

Defendant argues that the tiny Village of Brice is completely surrounded by lots in the City of Columbus commercially zoned as C–4, which permit adult bookstores under Columbus City Code § 3355.02. Even though Defendant does not admit that the 1994 Ordinance effectively bans adult facilities, it argues that such a ban is permissible under *Keego Harbor Co. v. City of Keego Harbor,* 657 F.2d 94 (6th Cir.1981) because the Village Ordinance 7–94 is justified by the findings enunciated in its preamble, and is narrowly drawn to further those justifications. This Court, however, disagrees.

Admittedly, both the Supreme Court in *Schad v. Borough of Mount Ephraim,* 452 U.S. 61, 76–77, 101 S.Ct. 2176, 68 L.Ed.2d 671 (1981), and the Sixth Circuit in *Keego Harbor* seemed to open the door to the possibility that an effective ban of adult entertainment facilities in a village would be permissible if supported by, and sufficiently drawn to further, the proper justifications:

> As a general rule, 'one is not to have the exercise of his liberty of expression in appropriate places abridged on the plea that it may be exercised in some other place.' *Mount Ephraim,* 452 U.S. at 76–77, 101 S.Ct. at 2187, quoting *Schneider v. State,* 308 U.S. 147, 163, 60 S.Ct. 146, 84 L.Ed. 155 ... (1939). In the same opinion, however, Justice White in writing for the majority recognized that it 'may very well be true' that a political entity could exclude certain protected activity on a showing that county-wide zoning provided 'close-by' areas in which the protected activity could be exercised. 452 U.S. at 76, 101 S.Ct. at 2187. Whether 'reasonable access' will validate a narrowly drawn statute is to be resolved on a case-by-case basis. *Id.* at 78, 101 S.Ct. at 2187 (Blackmun, J., concurring).

\* \* \* \* \* \*

> We do not hold that every unit of government, however small, must provide an area in which adult fare is allowed. 452 U.S. at 75 n. 18, 101 S.Ct. at 2186 n. 18. Where, however, an ordinance effectively bans material that is entitled to at least some degree of First Amendment protection, *Young v. American Mini Theatres,* 427 U.S. 50, 70, 96 S.Ct. 2440, 2452, 49 L.Ed.2d 310, that ordinance must be justified and drawn to further those justifications.

*Keego,* 657 F.2d at 98 n. 4, 99; *see also CLR Corp. v. Henline,* 702 F.2d 637, 639 (6th Cir.1983) (entertaining the possibility that a compelling governmental interest could justify such a severe restriction of first amendment rights in this context).

In addition, it is undisputed that the Village Council made findings in the preamble to Ordinance 7–94 which it believed justified the ordinance. However, this Court need not reach the question whether the Village's effective ban on adult facilities is justified by those findings, or sufficiently narrowly drawn to further those justifications.[9] The door

---

9. The very fact that the Village Council passed Ordinance 2–96 in 1996, changing the restriction on adult facilities from 1000 feet from a church/

school to 750 feet from a church/school, may be sufficient evidence for this Court to find that Ordinance 7–94 was substantially broader than

apparently opened by the *Schad* and *Keego Harbor* Courts appears to have been closed by the *Renton* Court, when that Court held that the First Amendment requires that a city refrain from effectively denying citizens a reasonable opportunity to open and to operate an adult theater within the city. *Renton*, 475 U.S. at 54.

In addition, the *Schad* and *Keego Harbor* Courts' comments in this context were dependent upon the existence of "county-wide zoning" which would "ensure that there were reasonable access to the protected activity in nearby areas." *Schad*, 452 U.S. at 76; *Keego*, 657 F.2d at 98. No evidence of such county-wide zoning is in the record before this Court. Therefore, the Village's effective ban on adult entertainment facilities in Ordinance 7–94 was unconstitutional as applied to Plaintiff in January 1995, when his tenant was foreclosed from operating an adult bookstore on the premises.

## C. The Remedy

Because this Court has found that the Village's 1994 Ordinance was an unconstitutional infringement of Plaintiff's First Amendment rights, it grants Plaintiff's Motion for Summary Judgment with respect to its request for a declaratory judgment that Ordinance 7–94 of the Village of Brice zoning code, which forbade the use of Plaintiff's premises at 2895 Brice Road as and for an adult bookstore, was unconstitutional as applied.

 However, Plaintiff also requests a permanent injunction restraining the Village from enforcing Ordinance 7–94. This the Court cannot do since it is undisputed that Ordinance 7–94 is no longer in effect and being enforced. The parties do not dispute that, in 1996, Ordinance 2–96 superceded Ordinance 7–94, and is currently in force in the Village. Plaintiff's request for an injunction against the enforcement and operation of Ordinance 7–94 is, therefore, moot. Furthermore, since it is also undisputed that Plaintiff's use of his premises at 2895 Brice Road as and for an adult bookstore is currently

prohibited under Ordinance 2–96, whose constitutionality Plaintiff does not challenge, this Court cannot grant Plaintiff's request to use or continue to use his property as an adult bookstore. Rather, the only issue remaining in this matter is the issue of the amount of damages Plaintiff suffered since his prospective tenant's opening of an adult bookstore was effectively thwarted in 1995 due to Ordinance 7–94.

Defendant argues that Plaintiff's claim for damages should be dismissed on summary judgment because the evidence shows that Plaintiff failed to make any attempt to mitigate his damages by renting out his premises for a use other than an adult bookstore.[10]

 Defendant's argument is premised on the incorrect assumption that Plaintiff has the burden of proof on this issue. While it is true that in a § 1983 case, the plaintiff has a duty to mitigate damages, it is also clearly established that defendant has the burden of proving a failure to mitigate damages properly. See *Meyers v. City of Cincinnati*, 14 F.3d 1115, 1119 (6th Cir.1994); *Rolfe v. County Bd., of Educ.*, 391 F.2d 77, 81 (6th Cir.1968). In order to meet this burden, the Village must present evidence that there were prospective tenants to which Plaintiff could have rented his premises at the same rate as his 1995 tenants, and that Plaintiff failed to rent out the premises. In addition, whether the affirmative defense of a failure to mitigate serves to vitiate entirely Plaintiff's right to damages or only to reduce the amount of damages depends upon the evidence presented by Defendant. Defendant has not presented any evidence on the matter. Finally, in general, the obligation to mitigate is largely an inquiry into "reasonableness" which is properly within the province of the jury. See *Smith v. Rowe*, 761 F.2d 360, 367 (7th Cir.1985). Accordingly, on the record before this Court, it cannot conclude that, as a matter of law, Plaintiff's right to any damages has been vitiated by his failure to try to rent out his property. Therefore,

necessary to achieve the government's interest, and therefore, unconstitutional.

10. Plaintiff simply states that the issue of damages is premature, and that it is irrelevant until liability is resolved.

Defendant's Motion for Summary Judgment on Plaintiff's claim for damages is **DENIED.**

## CONCLUSION

The Court finds that Plaintiff Wolfe has met his burden of establishing that no genuine issue of material fact exists regarding whether, in 1994, Ordinance 7–94 effectively banned the operation of an adult bookstore from the Village. Absent such a genuine issue, Plaintiff is entitled to judgment as a matter of law that Ordinance 7–94 was unconstitutional as applied. However, because Ordinance 7–94 is no longer in force, and because the constitutionality of Ordinance 2–96's effect on Plaintiff's premises has not been challenged, Plaintiff's request for an injunction is moot, and the only issue remaining to be tried is that of damages. For the reasons discussed herein, the Court **DENIES** the Village's Motion for Summary Judgment in its entirety. In addition, the Court **GRANTS** Wolfe's Motion for Summary Judgment on his request for a declaratory judgment, but **DENIES** his Motion for Summary Judgment on his request for a permanent injunction. This case will proceed to trial solely on the issue of damages.

**IT IS SO ORDERED.**